IN UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JUDICIAL WATCH, INC., ET AL.,<br><br>      Plaintiffs,<br><br>           v.<br><br>UNITED STATES DEPARTMENT OF<br>JUSTICE,<br><br>      Defendant. | )<br>)<br>)<br>)<br>)<br>)   Case No. 1:18-cv-00967-CKK<br>)<br>)<br>)<br>)<br>) |

## DECLARATION OF DAVID M. HARDY

I, David M. Hardy, declare as follows:

(1)     I am currently the Section Chief of the Record/Information Dissemination Section ("RIDS"), Information Management Division ("IMD"), of the Federal Bureau of Investigation ("FBI"), in Winchester, Virginia. I have held this position since August 1, 2002. Prior to joining the FBI, from May 1, 2001 to July 31, 2002, I was the Assistant Judge Advocate General of the Navy for Civil Law. In that capacity, I had direct oversight of Freedom of Information Act ("FOIA") policy, procedures, appeals, and litigation for the Navy. From October 1, 1980 to April 30, 2001, I served as a Navy Judge Advocate at various commands and routinely worked with FOIA matters. I am also an attorney who has been licensed to practice law in the State of Texas since 1980.

(2)     In my official capacity as Section Chief of RIDS, I supervise approximately 239 employees who staff a total of twelve (12) FBI Headquarters ("FBIHQ") units and two (2) field operational service center units whose collective mission is to effectively plan, develop, direct, and manage responses to requests for access to FBI records and information pursuant to the

1

FOIA, as amended by the OPEN Government Act of 2007 and the OPEN FOIA Act of 2009; the

FOIA Improvement Act of 2016; the Privacy Act of 1974; Executive Order 13,526; Presidential,

Attorney General and FBI policies and procedures; judicial decisions; and Presidential and

Congressional directives.  My responsibilities also include the review of FBI information for

classification purposes as mandated by Executive Order 13526,[1] and the preparation of

declarations in support of Exemption 1 claims asserted under the FOIA.  I have been designated

by the Attorney General of the United States as an original classification authority and a

declassification authority pursuant to Executive Order 13526, §§ 1.3 and 3.1.  The statements

contained in this declaration are based upon my personal knowledge, upon information provided

to me in my official capacity, and upon conclusions and determinations reached and made in

accordance therewith.

(3)     Due to the nature of my official duties, I am familiar with the procedures followed

by the FBI in responding to requests for information from its files pursuant to the provisions of

the FOIA, 5 U.S.C. § 552.  Specifically, I am familiar with the FBI's handling of Plaintiffs'

FOIA requests to the FBI for particular communications written, memorialized or approved by

former FBI Director James Comey.

(4)     In response, the FBI located 264 total pages[2] of responsive material consisting of

20 pages released in full ("RIF"), 128 pages released in part ("RIP"), and 116 pages withheld in

full ("WIF").  In accordance with *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), the FBI is

---

[1] 75 Fed. Reg. 707 (2010).

[2] The FBI has determined it inadvertently counted seven (7) pages (Bates stamped FBI 18-CV-00967-88-89, 91-92, 97-99), which it sent as a consult referral to the White House ("WH"), in the "reviewed" page tabulation twice on its August and September release letters.  Therefore, the true page count is 264 total pages of responsive material.

2

submitting this declaration in support of defendant's motion for summary judgment to provide

the Court and Plaintiff with the procedures used to search for, review, and process the responsive

records, and the FBI's justification for withholding information in full or in part pursuant to

FOIA Exemptions (b)(1), (b)(3), (b)(5), (b)(6), (b)(7)(C), (b)(7)(A), and (b)(7)(E).

## ADMINISTRATIVE HISTORY OF PLAINTIFF'S FOIA REQUESTS

### FOIPA REQUEST NUMBER 1374674-000

(5)    By letter dated May 22, 2017, Plaintiff Judicial Watch submitted a FOIA request

seeking:

> I.    Any and all records (sometimes referred to as "memoranda
>        to the file," "memoranda for record," and other variants)
>        written or ordered written by FBI Director James Comey
>        summarizing his conversations with any of the following
>        individuals:
>        • Barack Obama
>        • Joe Biden
>        • Hillary Clinton
>        • Senator Chuck Schumer
>        • Representative Nancy Pelosi
>        • Senator John McCain
>
> II.   Any and all handwritten notes used as the basis for preparing any records
>        responsive to Bullet 1. (*See* **Exhibit A.**)

(6)    By letter dated May 25, 2017, the FBI acknowledged receipt of Plaintiff's request

and assigned it FOIPA Request Number 1374674-000. The FBI advised that Plaintiff's request

for a fee waiver was being considered and that it will be advised of the decision at a later date.

Finally, the FBI determined Plaintiff was an educational institution, noncommercial scientific

institution or representative of the news media requester, and therefore would be charged any

applicable duplication fees. (*See* **Exhibit B.**)

### FOIPA REQUEST NUMBER 1396901-000

(7)    By letter dated February 16, 2018, Plaintiff Daily Caller News Foundation

submitted a FOIA request seeking:

> [R]ecords that identify and describe all meetings between former
> FBI Director James Comey and President Barack Obama. This
> records request is for all meetings with President Obama alone or
> with meetings with the President in the company of other
> administration officials.  The request also sought all records that
> memorialize and describe the meetings between Director Comey
> and the President, along with meetings with the President in the
> company of other administration officials.

**(*See* Exhibit C.)**

(8)     By letter dated February 26, 2018, the FBI acknowledged receipt of Plaintiff's

request through its eFOIPA system[3] and assigned it FOIPA Request Number 1396901-000.  The

FBI advised that Plaintiff's request for a public interest fee waiver was being considered and

that it will be advised of the decision at a later date.  Finally, the FBI determined Plaintiff was

an educational institution, noncommercial scientific institution or representative of the news

media requester, and therefore would be charged any applicable duplication fees. **(*See* Exhibit

D.)**

(9)     By letter dated February 26, 2018, the FBI advised it was denying Plaintiff's

request for expedited processing because he did not provide enough information concerning the

statutory requirements permitting expedition of the request. **(*See* Exhibit E.)**

(10)     By letter dated February 28, 2018, Plaintiff appealed the FBI's expedited

processing denial decision. **(*See* Exhibit F.)**

(11)     By letter dated February 28, 2018, the Office of Information Policy (OIP)

---

[3] The FBI's eFOIPA system allows for electronic receipt of Freedom of Information/Privacy Act
(FOIPA) requests as well as electronic responses to those requests when possible. *See*
https://efoia.fbi.gov.

acknowledged receipt of Plaintiff's appeal and assigned it appeal number DOJ-AP-2018-003018. (*See* **Exhibit G.**)

(12)    By letter dated May 16, 2018, OIP advised Plaintiff it was closing his appeal due to his FOIA request being in active litigation. (*See* **Exhibit H.**)

(13)    On April 25, 2018, Plaintiffs jointly filed their complaint in the instant action challenging the FBI's response to their FOIA requests. (*See* **ECF Docket Number 1.**)

## PRODUCTION HISTORY

(14)    By letter dated August 30, 2018, the FBI advised it reviewed 110 pages and released 70 pages of responsive material in part or in full to Plaintiffs with certain information withheld pursuant to FOIA Exemptions (b)(5), (b)(6), (b)(7)(C), and (b)(7)(E).  The FBI also advised Plaintiff that it was consulting with another government agency and it would correspond with Plaintiffs when the consultation is complete. (*See* **Exhibit I.**)

(15)    By letter dated September 28, 2018, the FBI advised it reviewed 161 pages and released 50 pages of responsive material in part or in full to Plaintiffs with certain information withheld pursuant to FOIA Exemptions (b)(1), (b)(3), (b)(5), (b)(6), (b)(7)(A), (b)(7)(C), and (b)(7)(E).  The FBI also advised Plaintiffs that it was consulting with another government agency and it would correspond with Plaintiffs when the consultation is complete. (*See* **Exhibit J.**)

(16)    By letter dated November 1, 2018, the FBI advised it was releasing 35 pages[4] of responsive material in part or in full to Plaintiffs with certain information withheld pursuant to FOIA Exemptions (b)(5), (b)(6), (b)(7)(C), and (b)(7)(E) as a result of consultation with the WH.

---

[4] This release letter states there were 35 pages reviewed and 35 pages released; however the FBI had already accounted for these pages in previous releases so while this is the final production in this case it does not consist of any new responsive material.

The FBI stated this production represented the final release of material in this case. (*See* **Exhibit K.**)

## SEARCHES FOR RESPONSIVE RECORDS

(17)   The FBI's general practice is to search its Central Records System ("CRS") to determine if the FBI has records about particular investigative subjects in response to most FOIA requests. The FBI ordinarily relies on the CRS because it is an extensive system of records consisting of applicant, investigative, intelligence, personnel, administrative, and general files compiled and maintained by the FBI in the course of fulfilling its integrated missions and functions as a law enforcement, counterterrorism, and intelligence agency. In the CRS, FBI employees record index terms in files that are useful to a particular investigation or that are deemed potentially useful for future investigative/intelligence retrieval purposes, such as names of individuals, organizations, companies, publications, activities, or foreign intelligence matters (or programs); they do not index every individual name or other subject matter in the general indices. To locate information indexed in files in the CRS, RIDS employs an index search methodology.

(18)   An index search of the CRS for investigative records is reasonably expected to locate responsive material within the vast CRS since the FBI indexes pertinent information into the CRS to facilitate retrieval based on operational necessity.

(19)   For the requests at issue in this case, however, a search of the CRS would not be reasonably likely to locate responsive records in light of the purpose, design and organization of the CRS, the manner in which the records of the CRS are indexed, and the nature of the requested records.

(20)   Instead, RIDS determined that the requested records would likely be located from

a search within the FBI's classified and unclassified email systems identifying former FBI Director Comey as the custodian who may have either sent or received emails concerning the subject matter of Plaintiffs' requests. Therefore, on or about June 19, 2018, the FBI searched electronic communications and calendars on both its classified and unclassified systems of former FBI Director Comey, identified as the custodian for these records in both of Plaintiff's FOIA requests, using the following search terms: "Obama," "POTUS," "Biden," "Hillary Clinton," "Schumer," "Pelosi," and "McCain." The date range was restricted to records created between September 4, 2013 and May 9, 2017 as requested in FOIPA Request Number 1374674-000. This search yielded responsive records.

(21)   The FBI also concluded that responsive records, if they existed, would likely be maintained within the FBI Information Management Division's collection of former Director Comey's records, which were compiled and preserved after his removal. IMD reviewed the contents of the collection to locate any records falling within the scope of Plaintiffs' requests. Specifically, IMD personnel utilized the same search terms detailed at ¶ 20 *supra* to conduct an electronic search of this collection of former Director Comey's records, scoped through any resultant hits from this search to determine if the hits were responsive, and imported any responsive material for processing. Consequently, the FBI determined that some of the responsive material in this case was located in this collection of records.

(22)   The FBI has not identified any other location or record system where responsive records would likely be maintained nor did the results of its e-mail search identify leads to any such locations or systems. Thus, the FBI has determined there is no other location or record system reasonably likely to contain responsive documents.

7

## JUSTIFICATION FOR NONDISCLOSURE UNDER THE FOIA

(23)    All documents responsive to Plaintiffs' requests and subject to the FOIA were

processed to achieve maximum disclosure consistent with the access provisions of the FOIA.

Every effort was made to provide Plaintiffs with all material in the public domain and with all

reasonably segregable non-exempt information in the responsive records.  No reasonably

segregable, non-exempt portions have been withheld from Plaintiffs.  Further description of the

information withheld beyond what is provided in this declaration, could identify the actual

exempt information that the FBI has protected.  Copies of the pages released in part and in full

have been consecutively numbered "FBI 18-CV-00967-1 through FBI 18-CV-00967-264" at the

bottom of each page.  Pages withheld in their entirety (*e.g.*, removed per FOIA Exemption,

duplicative of another responsive page, or because they were deemed not responsive) were

replaced by a "Deleted Page Information Sheet" ("DPIS"), which identifies the reason and/or

the applicable FOIA exemptions relied upon to withhold the page in full, as well as the Bates

numbers for the withheld material.  The DPISs and Bates-numbered pages that were released in

part have been provided to Plaintiffs by letters at Exhibits I-K; and may be made available to

the Court upon request.  *See* ¶¶ 14-16, *supra*.  The exemptions asserted by the FBI as grounds

for non-disclosure of portions of documents are FOIA exemptions 1, 3, 5, 6, 7(C), 7(A), and

7(E), 5 U.S.C. § 552 (b)(1), (b)(3), (b)(5), (b)(6), (b)(7)(C), (b)(7)(A), and (b)(7)(E).

### Explanation of the Coded Format Used to Describe and Justify Withholdings

(24)    The Bates-numbered documents contain, on their faces, coded categories of

exemptions that detail the nature of the information withheld pursuant to the provisions of the

FOIA.  The coded categories are provided to aid the Court's and Plaintiffs' review of the FBI's

explanations of the FOIA exemptions it has asserted to withhold the material.  The coded,

8

Bates-numbered pages together with this declaration demonstrate that all material withheld by the FBI is exempt from disclosure pursuant to the cited FOIA exemptions, or is so intertwined with protected material that segregation is not possible without revealing the underlying protected material.

(25)   Each instance of information withheld on the Bates-numbered documents is accompanied by a coded designation that corresponds to the categories listed below.  For example, if "(b)(7)(C)-1" appears on a document, the "(b)(7)(C)" designation refers to FOIA Exemption 7(C) protecting against unwarranted invasions of personal privacy.  The numerical designation of "1" following the "(b)(7)(C)" narrows the main category into a more specific subcategory, such as "Names and/or Identifying Information of FBI Special Agents/Support Personnel."

(26)   Listed below are the categories used to explain the FOIA exemptions asserted to withhold the protected material:

| SUMMARY OF JUSTIFICATION CATEGORIES | |
|---|---|
| **CODED CATEGORIES** | **INFORMATION WITHHELD** |
| **Category (b)(1)** | **CLASSIFIED INFORMATION** |
| (b)(1)-1 | Information Properly Classified By an FBI Official Pursuant to E.O. 13526 |
| **Category (b)(3)** | **INFORMATION PROTECTED BY STATUTE** |
| (b)(3)-1 | National Security Act (NSA) of 1947 [50 USC Section 3024(i)(1)] |
| **Category (b)(5)** | **PRIVELEGED INFORMATION** |
| (b)(5)-1 | Deliberative Process Privilege |

| SUMMARY OF JUSTIFICATION CATEGORIES | |
|---|---|
| **CODED CATEGORIES** | **INFORMATION WITHHELD** |
| **Category (b)(6) and (b)(7)(C)** | **CLEARLY UNWARRANTED INVASION OF PRIVACY AND UNWARRANTED INVASION OF PERSONAL PRIVACY** |
| (b)(6)-1 and (b)(7)(C)-1 | Names and/or Identifying Information of FBI Special Agents/Support Personnel |
| (b)(6)-2 and (b)(7)(C)-2 | Names and/or Identifying Information of Non-FBI Federal Government Personnel |
| (b)(6)-3 and (b)(7)(C)-3 | Names and/or Identifying Information of Third Parties Merely Mentioned |
| (b)(6)-4 and (b)(7)(C)-4 | Names and/or Identifying Data of Third Parties of Investigative Interest |
| **Category (b)(7)(A)** | **PENDING LAW ENFORCEMENT PROCEEDINGS** |
| (b)(7)(A)-1 | Information Which, if Disclosed, Could Reasonably be Expected to Interfere with Pending Law Enforcement Proceedings |
| **Category (b)(7)(E)[5]** | **INVESTIGATIVE TECHNIQUES AND PROCEDURES** |
| (b)(7)(E)-1 | Identity and/or Location of FBI or Joint Units, Squads, Divisions |
| (b)(7)(E)-2 | Sensitive Phone Number for Other Government Agency (OGA) |
| (b)(7)(E)-4 | Collection / Analysis of Information |
| (b)(7)(E)-5 | Investigative Focus of Specific Investigation |
| (b)(7)(E)-6 | Sensitive Database Information |
| (b)(7)(E)-7 | Sensitive File Numbers |
| (b)(7)(E)-8 | Dates / Types of Investigations (Preliminary / Full Investigations) |

---

[5] The FBI initially cited Category (b)(7)(E)-3 on Bates page FBI-18-CV-00967-120; however upon further review the FBI determined this information should instead be protected with Category (b)(7)(E)-4 for Collection / Analysis of Information.

| SUMMARY OF JUSTIFICATION CATEGORIES | |
| --- | --- |
| **CODED CATEGORIES** | **INFORMATION WITHHELD** |
| (b)(7)(E)-9 | FBI Internal Non-Public Intranet Email Addresses and Phone Numbers |

## EXEMPTION 1 – CLASSIFIED INFORMATION

(27)    Exemption 1 protects records that are "(A) specifically authorized under criteria established by an Executive Order to be kept secret in the interest of national defense or foreign policy; and (B) are in fact properly classified pursuant to such Executive Order . . . ." *See* 5 U.S.C. § 552(b)(1).  The FBI also relied on Exemptions 3 and 7(E) to protect information in these records.

(28)    Before I consider an Exemption (b)(1) claim for withholding agency records, I determine whether the information in those records is information that is currently and properly classified – *i.e.*, satisfies the requirements of Executive Order ("E.O.") 13,526 and complies with the various substantive and procedural criteria of the E.O. The E.O. 13,526 was signed by President Barack Obama on December 29, 2009, and is the Executive Order that currently governs the classification and protection of national security information.[6]  I am bound by the requirements of E.O. 13,526 when making classification determinations.

(29)    For information to be properly classified, and thus properly withheld from disclosure pursuant to Exemption 1, the information must meet the requirements set forth in E.O. 13,526 § 1.1(a):

---

[6] E.O. 13,526 § 6.1(cc) defines "National Security" as "the national defense or foreign relations of the United States."

(1)     an original classification authority must have classified the information;

(2)     the information must be owned by, produced by or for, or be under the control of the United States Government;

(3)     the information must fall within one or more of the categories of information listed E.O. 13,526 § 1.4; and

(4)     the original classification authority must determine that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security, which includes defense against transnational terrorism, and the original classification authority must be able to identify or describe the damage

(30)   In addition to these substantive requirements, E.O. 13,526 sets forth certain procedural and administrative requirements that must be followed before information can be considered to be properly classified. Those requirements include the following:

(1)     Each document must be marked as required and stamped with the proper classification designation.

(2)     Each document must be marked to indicate clearly which portions are classified and which portions are exempt from declassification as set forth in E.O. 13,526 § 1.5(b).

(3)     The prohibitions and limitations on classification specified in E.O. 13,526 § 1.7 were adhered to.

(4)     The declassification policies set forth in E.O. 13,526 §§ 3.1 and 3.3 were followed.

(5)     Any reasonably segregable portion of the classified documents that did not meet the standards for classification under E.O. 13,526 were declassified and marked for release, unless withholding was otherwise warranted under applicable law.

(31)   All information which I determined to be classified is marked at the "Secret" level, since the unauthorized disclosure of this information reasonably could be expected to cause serious damage to the national security.

12

**Findings of the Declarant Regarding Exemption 1**

(32)   With the above requirements in mind, I personally and independently examined the information withheld from Plaintiff pursuant to FOIA Exemption 1 and determined that it is currently and properly classified pursuant to E.O. 13,526.

(33)   I determined that this information satisfies the substantive requirements of the Executive Order. Specifically, I determined that the classified information protected by the FBI in this case is owned by, was produced by or for, and is under the control of the U.S. Government, and that it was classified by an original classification authority.  I further determined that the classified information protected by the FBI in this case continues to warrant classification at the "Secret" level (as marked on the documents) to protect "intelligence activities (including covert action), intelligence sources or methods, or cryptology" pursuant to E.O. 13,526 § 1.4(c).

(34)   Finally, I made certain that all procedural requirements of E.O. 13,526 set forth above were followed in order to ensure that the information was properly classified.

**E.O. 13,526 § 1.4(c) – Intelligence Activities, Sources and Methods**

(35)   E.O. 13,526 § 1.4(c) authorizes the classification of "intelligence activities (including covert action), intelligence sources or methods, and cryptology," in order to protect classified intelligence sources, methods, and activities utilized by the FBI for gathering intelligence data.

(36)   An intelligence activity or method includes any intelligence action or technique utilized by the FBI against a targeted individual or organization that has been determined to be of national security interest.  An intelligence method is used to indicate any procedure (human or non-human) utilized to obtain information concerning such individual or organization.  An

13

intelligence activity or method has two characteristics. First, the intelligence activity or method -- and information generated by it -- is needed by U. S. Intelligence/Counterintelligence agencies to carry out their missions. Second, confidentiality must be maintained with respect to the activity or method if the viability, productivity and usefulness of its information is to be preserved. Information was withheld pursuant to Exemption 1 to protect intelligence methods utilized by the FBI for gathering intelligence data.

(37)    The classified material here would, if disclosed, reveal an actual intelligence activity and method used by the FBI or disclose the intelligence-gathering capabilities of the activities or methods directed at specific targets. The information obtained from the intelligence activities or methods is very specific in nature, provided during a specific time period, and known to very few individuals.

(38)    It is my determination that the disclosure of the specific information describing the intelligence activity or method withheld in this case, which is still used by the FBI today to gather intelligence information, could reasonably be expected to cause serious damage to the national security for the following reasons: (a) disclosure would allow hostile entities to discover the current intelligence-gathering methods used; (b) disclosure would reveal current specific targets of FBI's national security investigations; and (c) disclosure would reveal the determination of criteria used and priorities assigned to current intelligence or counterintelligence investigations. With the aid of this detailed information, hostile entities could develop countermeasures that would, in turn, severely disrupt the FBI's intelligence-gathering capabilities. This severe disruption would also result in serious damage to the FBI's efforts to detect and apprehend violators of national security and criminal laws of the United States. This information is currently and properly classified at the "Secret" level, in accordance

14

with E.O. 13,526 § 1.4(c), and is exempt from disclosure pursuant to Exemption 1, as well

Exemption 3/National Security Act of 1947, 50 U.S.C. § 3024(i)(1), as explained *infra*.

(39)   The FBI protected detailed intelligence activity information compiled regarding a

specific individual or organization of national security interest because disclosure reasonably

could be expected to cause serious damage to the national security.  Below is a more detailed

discussion of this category.

*Detailed Intelligence Activities*

(40)   The classified information withheld within these documents contains detailed

intelligence activity information gathered or compiled by the FBI on a specific individual or

organization of national security interest.  The disclosure of this information could reasonably

be expected to cause serious damage to the national security, as it would: (a) reveal the actual

intelligence activity or method utilized by the FBI against a specific target; (b) disclose the

intelligence-gathering capabilities of the method; and (c) provide an assessment of the

intelligence source penetration of a specific target during a specific period of time.  This

information is properly classified at the "Secret" level and withheld pursuant to E.O. 13,526

§ 1.4(c), and is exempt from disclosure pursuant to Exemption 1.[7]

**Defendant's Burden of Establishing Exemption 1 Claims**

(41)   The information withheld in this case pursuant to Exemption 1 was examined in

light of the body of information available to me concerning the national defense and foreign

relations of the United States.  This information was not examined in isolation.  Instead, each

piece of information was evaluated with careful consideration given to the impact that

---

[7] Classified information was protected on Bates pages: FBI-18-CV-00967-180 and 182.

disclosure of this information will have on other sensitive information contained elsewhere in the United States intelligence community's files. Equal consideration was given to the impact that other information either in the public domain or likely known or suspected by present or potential adversaries of the United States would have upon the information I examined.

(42)    In those instances where, in my judgment, the disclosure of this information could reasonably be expected to cause serious damage to the national security, and its withholding outweighed the benefit of disclosure, I exercised my prerogative as an original classification authority and designated that information as classified in the interest of national security at the "Secret" level, and invoked FOIA Exemption 1 to prevent disclosure. The explanations set forth above justifying the FBI's withholding of classified information were prepared with the intent that they be read with consideration given to the context in which the classified information is found. This context includes not only the surrounding unclassified information, but also other information already in the public domain, as well as information likely known or suspected by hostile intelligence entities. It is my judgment that any greater specificity in the descriptions and justifications set forth with respect to information relating to intelligence sources and methods of the United States could reasonably be expected to jeopardize the national security of the United States.

## EXEMPTION 3 – INFORMATION PROTECTED BY STATUTE

(43)    Exemption 3 exempts information when another federal statute prohibits its disclosure provided that either the statute "requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue," or the statute "establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3). Moreover, if the withholding statute was enacted after October 28, 2009 (the date of

16

enactment of the OPEN FOIA Act of 2009), then it must specifically cite to § 552(b)(3).

### National Security Act of 1947, 50 U.S.C. § 3024 (i)(1)

(44)   In Category (b)(3)-1, the FBI withheld information pursuant to Section 102A(i)(1) of the National Security Act of 1947 ("NSA"), as amended by the Intelligence Reform and Terrorism Prevention Act of 2004 ("IRTPA"), 50 U.S.C. § 3024(i)(1), which provides that the Director of National Intelligence ("DNI") "shall protect from unauthorized disclosure intelligence sources and methods."   As relevant to U.S.C. § 552(b)(3)(B), the National Security Act of 1947 was enacted before the date of enactment of the OPEN FOIA Act of 2009.  On its face, this federal statute leaves no discretion to agencies about withholding from the public information about intelligence sources and methods. Thus, the protection afforded to intelligence sources and methods by 50 U.S.C. § 3024(i)(1) is absolute. See CIA v. Sims, 471 U.S. 159 (1985).

(45)   In order to fulfill its obligation of protecting intelligence sources and methods, the DNI is authorized to establish and implement guidelines for the Intelligence Community ("IC") for the classification of information under applicable laws, Executive Orders, or other Presidential Directives, and for access to and dissemination of intelligence.  50 U.S.C. § 3024(i)(1).  In implementing this authority, the DNI promulgated Intelligence Community Directive 700, which provides that IC elements shall protect "national intelligence and intelligence sources and methods and activities from unauthorized disclosure."   The FBI is one of 17 member agencies comprising the IC, and as such must protect intelligence sources and methods.

(46)   Given the plain Congressional mandate to protect the IC's sources and methods of gathering intelligence, the FBI has determined that intelligence sources and methods would be

revealed if any of the withheld information is disclosed to plaintiffs.  Therefore, the FBI is

prohibited from disclosing such information under § 3024 (i)(1).

(47)    The FBI is asserting Exemption 3 in this case, at times in conjunction with

Exemptions 1 and 7(E) to protect information that would reveal intelligence sources and

methods.  In some instances, information would reveal classified intelligence sources and

methods protected by Exemption 1.  In some instances, information was protected under

Exemption 7(E) because unclassified intelligence sources and methods were employed as law

enforcement techniques, procedures or guidelines and thus would qualify as both an intelligence

source and method under Exemption 3 and a law enforcement technique under Exemption

7(E).[8]  Notably, § 3024 (i)(1) protects sources and methods regardless of whether they are

classified.  *See Sims*, 471 U.S. at 176.

## EXEMPTION 5 – PRIVILEGED INFORMATION

(48)    FOIA exemption 5 exempts from disclosure "inter-agency or intra-agency

memorandums or letters which would not be available by law to a party other than an agency in

litigation with the agency." 5 U.S.C. § 552(b)(5).

(49)    Exemption 5 has been construed to exempt documents or information normally

privileged in the civil discovery context, and incorporates the attorney work product, attorney-

client, and deliberative process privileges.  The deliberative process privilege protects pre-

decisional, deliberative communications that are part of a process by which agency decisions

are made.  It protects opinions, advice, evaluations, deliberations, proposals, or

recommendations that form part of an agency decision-making process, as well as the selection

---

[8] Category (b)(3)-1 was applied on the following Bates pages: FBI-18-CV-00967-180, 182, 191-
192, and 201-202.

and sorting of factual information relied upon as part of the decision-making process.

(50)   In order to apply Exemption 5, agencies must first satisfy the threshold requirement – *i.e.*, show that the information protected was "inter-agency or intra-agency." As it pertains to the documents withheld pursuant to Exemption 5 in this case, the inter-agency and/or intra-agency character of the documents is readily apparent on their face or by the context in which they appear. The documents were generated and distributed in the context of internal FBI discussions or communications between FBI officials, as will be further demonstrated in the following paragraphs. Agencies must next satisfy the elements of the pertinent privilege. With respect to the deliberative process privilege, agencies must show that the withheld information was both pre-decisional – *i.e.*, antecedent to a final agency decision – and deliberative – *i.e.*, part of the process in which the agency engaged in an effort to reach a final decision (whether or not any final decision was ever reached). The satisfaction of the particular elements is discussed in further detail in the following paragraphs.

### *Deliberative Process Privilege*

(51)   In Category (b)(5)-1, the FBI protected privileged deliberative materials. The deliberative process privilege protects the internal deliberations of the government by exempting from release recommendations, analyses, speculation and other non-factual information prepared in anticipation of agency decision-making. The general purpose of the deliberative process privilege is to prevent injury to the quality of agency decisions. Thus, material containing or prepared in connection with the formulation of opinions, advice, evaluations, deliberations, policy formulation, proposals, conclusions or recommendations may properly be withheld. Release of this type of information would have an inhibitive effect upon the development of policy and administrative direction of an agency because it would chill the

full and frank discussion between agency personnel regarding a decision.  If agency personnel

knew that their preliminary opinions, evaluations and comments would be released for public

consumption, they may be more circumspect in what they put in writing, and thereby, impede a

candid discussion of the issues surrounding a decision.

(52)    The FBI has appropriately asserted Category (b)(5)-1 pursuant to the deliberative

process privilege in two primary sub-categories of withholding rationale:  (a) records reflecting

the give and take of internal agency deliberations and policy/decision formulation regarding

topics to be briefed to the President of the United States; and (b) documents in draft format for

the same purpose.

(a)    **Records reflecting the give and take of agency deliberations**.  The FBI

protected advice and suggestions provided to former FBI Director James Comey for various

meetings with the President of the United States.  For example, Bates page FBI-18-CV-00967-59

describes a planned meeting between Director Comey and the President with a small redaction

block protecting suggested actions from former FBI Chief of Staff James Rybicki for that

meeting.  There are other examples of this type of internal deliberation within the universe of

responsive material in this case of which this internal "give and take" is both (a) "predecisional"

and (b) "deliberative."  They are predecisional because they are antecedent to the adoption of

agency policy and/or decisions about various aspects of specific investigations to be briefed to

the President.  They are similarly deliberative because they specifically reflect the internal

shaping and continuous deliberation of the FBI's position about given law enforcement issues

and include proposed topics and issues for discussion or consideration.  They therefore reflect an

on-going dialogue among and between FBI employees, other government personnel, and other

law enforcement agencies.

(b)     **Draft documents**.  Similarly, the FBI utilitzed this category to protect draft talking points for other meetings beween Director  Comey and the President (*e.g.,* Bates pages FBI-18-CV-00967-146 through 153).  By their very nature as draft documents, these records are pre-decisional preliminary versions of what may later become a final document reflecting an agency policy or decision, or what may remain in draft format and never mature into a final, approved form because the material may be withdrawn or discarded during the give and take of the deliberative process leading to a final policy or decision.  (In fact, the process by which a draft evolves into a final document is itself a deliberative process.)

(53)   In conclusion, the information in both types of deliberative material located in the responsive documents here are inclusively predecisional because although they influenced the final decision or what was discussed with the President at these meetings these suggestions were ultimately still subject to any substantive changes based on candid discussions and deliberations between the FBI officials in the case.  Additionally, these documents are also part of a deliberative process; that is, preparing an FBI Director to speak truthfully and factually with the President on a given occasion.  Such information is researched, gathered, analyzed and presented to the Director for consideration before final disclosure (even to the President) is made.  Indeed, throughout the electonic communications in this case, there is constant discussion and solicitation of input from top FBI Officials to prepare Director Comey for meetings with the President or the National Security Council.

(54)   Accordingly, the FBI protected information in this case pursuant to the deliberative process privilege as it qualified as both predecisional as well as part of a deliberative fact-finding process and the release of the withheld information on these specific

documents is likely to chill full, frank, and open discussions among top agency personnel.[9]

## EXEMPTION 7 THRESHOLD

(55)    Before an agency can invoke any of the harms enumerated in Exemption 7, it must first demonstrate that the records or information at issue were compiled for law enforcement purposes.  Pursuant to 28 U.S.C. §§ 553, 534 and Executive Order 12333 as implemented by the Attorney General's Guidelines for Domestic Operations ("AGG-DOM") and 28 CFR § 0.85, the FBI is the primary investigative agency of the federal government with authority and responsibility to investigate all violations of federal law not exclusively assigned to another agency, to conduct investigations and activities to protect the United States and its people from terrorism and threats to national security, and further the foreign intelligence objectives of the United States.  Under this investigative authority, portions of the responsive records herein were compiled for law enforcement purposes; they squarely fall within the law enforcement duties of the FBI; therefore, the information readily meets the threshold requirement of Exemption 7.

## EXEMPTIONS 6 AND 7(C) – INVASIONS OF PERSONAL PRIVACY

(56)    Exemption 6 exempts from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  All information that applies to a particular person falls within the scope of Exemption 6.

(57)    Exemption 7(C) similarly exempts from disclosure "records or information compiled for law enforcement purposes [when disclosure] could reasonably be expected to

---

[9] Category (b)(5)-1 was asserted on the following Bates pages: FBI-18-CV-00967-37-38, 59, 117, 137-140, 143, 146-153, 178-185, 204-245, 248-250, 254, and 264.

constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).[10]

(58)   When withholding information pursuant to these two exemptions, the FBI is

required to balance the privacy interests of the individuals mentioned in these records against

any public interest in disclosure.  In asserting these exemptions, each piece of information was

scrutinized to determine the nature and strength of the privacy interest of every individual

whose name and/or identifying information appears in the documents at issue.  When

withholding the information, the individual's privacy interest was balanced against the public's

interest in disclosure.  For purposes of these exemptions, a public interest exists only when

information about an individual would shed light on the FBI's performance of its mission to

protect and defend the United States against terrorist and foreign intelligence threats, to uphold

and enforce the criminal laws of the United States, and to provide leadership and criminal

justice services to federal, state, municipal, and international agencies and partners.  In each

instance where information was withheld pursuant to Exemptions 6 and 7(C), the FBI

determined that the individuals' privacy interests outweighed any public interest in disclosure.

**(b)(6)-1 and (b)(7)(C)-1**    **Names and/or Identifying Information of FBI Special Agents /
                                 Support Personnel**

(59)   In Categories (b)(6)-1 and (b)(7)(C)-1, the FBI protected the names and

identifying information[11] of FBI Special Agents ("SAs") and support personnel who were

---

[10] The practice of the FBI is to assert Exemption 6 in conjunction with Exemption 7(C).
Although the balancing test for Exemption 6 uses a "would constitute a clearly unwarranted
invasion of personal privacy" standard and the test for Exemption 7(C) uses the lower standard
of "could reasonably be expected to constitute an unwarranted invasion of personal privacy," the
analysis and balancing required by both exemptions is sufficiently similar to warrant a
consolidated discussion.  The privacy interests are balanced against the public's interest in
disclosure under both exemptions.
[11] As used in this declaration, the term "identifying information" includes email addresses,
telephone numbers, and any other information by which an individual could be identified.

responsible for conducting, supervising, and/or maintaining the investigative activities and research reflected in the documents responsive to Plaintiff's FOIPA requests. Specifically, these agents provided in-depth investigative background, strategy, and future steps for specific FBI investigations which were briefed to the President by Mr. Comey. These responsibilities included compiling and analyzing information as well as reporting on the status of investigations to FBI Officials. Assignments of SAs to any particular investigation are not by choice. Publicity (adverse or otherwise) regarding any particular investigation to which they have been assigned may seriously prejudice their effectiveness in conducting other investigations. The privacy consideration is also to protect FBI SAs, as individuals, from unnecessary, unofficial questioning as to the conduct of this or other investigations, whether or not they are currently employed by the FBI. FBI SAs conduct official inquiries into various criminal and national security violation cases. They come into contact with all strata of society, conducting searches and making arrests, both of which result in reasonable but nonetheless serious disturbances to people and their lives. It is possible for an individual targeted by such law enforcement actions to carry a grudge which may last for years. These individuals may seek revenge on the agents and other federal employees involved in a particular investigation. The publicity associated with the release of an agent's identity in connection with a particular investigation could trigger hostility toward a particular agent. Thus, SAs maintain substantial privacy interests in information about them in criminal investigative files.

(60)   The FBI also protected the names of FBI support employees. Support personnel are assigned to handle tasks related to the official investigations reflected in the documents responsive to Plaintiff's FOIPA request. Specifically, these support personnel assisted FBI agents in gathering specific case research involving background, strategy, and future steps

24

which was briefed to the President by Mr. Comey. They were, and possibly are, in a position of access to information regarding official law enforcement investigations, and therefore could become targets of harassing inquiries for unauthorized access to investigations if their identities were released.

(61)   The FBI then considered whether there was any public interest in disclosure of its SAs' and support personnel's identities or identifying information and determined that there was none. Specifically, publicly revealing these individual employees' identities or identifying information, by itself, would not significantly increase the public's understanding of FBI operations and activities.

(62)   Accordingly, after balancing these employees' significant privacy interests against a lack public interest, the FBI concluded that disclosure of the protected information would constitute a clearly unwarranted invasion of personal privacy.   The FBI therefore properly protected the names and identifying information of its SAs and support personnel.[12]

**(b)(6)-2 and (b)(7)(C)-2** .   **Names and/or Identifying Information of Non-FBI Federal Government Personnel**

(63)   In Categories (b)(6)-2 and (b)(7)(C)-2, the FBI protected the names and identifying information of non-FBI federal government personnel mentioned in records responsive to Plaintiff's requests. Specifically, the FBI protected the names and email addresses of Department of Justice, White House, and Bureau of Alcohol, Tobacco, Firearms and Explosives personnel. The relevant inquiry here is whether public access to this

---

[12] Categories (b)(6)-1 and (b)(7)(C)-1 were asserted on the following Bates pages: FBI-18-CV-00967-2, 7-8, 11, 13-18, 21-26, 28, 30, 37-57, 59-60, 62, 65-66, 68, 70-77, 79, 83-86, 88-89, 91-92, 97-104, 106-111, 113-115, 117, 119-125, 127, 129-130, 132-133, 137, 139-141, 143-144, 146, 152, 155, 157, 159-163, 165-166, 174, 178, 181, 184, 191, 193-194, 199-201, 203-204, 208, 212, 216-217, 220, 234-235, 245-248, 250, 254, and 263-264.

information would violate a viable privacy interest of these individuals, and whether there is a public interest in releasing their identities. Disclosure of these individuals' identities and identifying information could subject these personnel to unauthorized inquiries or harassment, and thus would invade their personal privacy. The same considerations explained in relation to FBI employees apply here in concluding that these employees have demonstrable privacy interests in relation to the responsive records in this case. In contrast, the FBI determined that there is no public interest in this information because their identities will not shed light on the operations and activities of the federal government.

(64)    Accordingly, the FBI has concluded that these employees' privacy interests outweigh a non-existent public interest. The FBI therefore properly protected the names and identifying information of non-FBI federal government personnel.[13]

## (b)(6)-3 and (b)(7)(C)-3    Names and/or Identifying Information of Third Parties Merely Mentioned

(65)    In Categories (b)(6)-3 and (b)(7)(C)-3, the FBI protected the names and identifying information of third-parties who were merely mentioned in the responsive documents. The FBI has information about these third parties in its files because these individuals were related either directly or indirectly with the meetings, discussions, or conference calls at issue in the emails responsive to Plaintiff's FOIA requests. The FBI concluded that they had demonstrable privacy interests because disclosure of their identities and identifying information in relation to particular meetings, discussions, and conference calls could subject them to unwanted contacts and attempts to learn non-public information about

---

[13] Categories (b)(6)-2 and (b)(7)(C)-2 were asserted on the following Bates pages: FBI-18-CV-00967-2, 8, 72, 79, 83-86, 88-89, 91-92, 97-99, 137, 184-185, 212, and 220.

those activities. The nexus here, lies in the fact that these merely mentioned third party individuals were present for meetings where investigative strategy or even background of specific FBI investigations were briefed in anticipation of discussion with the President. Therefore, although these individuals were considered essential, as evidenced by the fact that they were either in attendance or even set up these meetings, disclosure of their names and/or identifying information in connection with this type of information may carry an extremely negative connotation. Disclosure of their identities would also subject these individuals to possible harassment or criticism and focus derogatory inferences and suspicion on them. The FBI then considered whether there was any public interest that would override these privacy interests, and concluded that disclosing information about individuals merely mentioned in an FBI file would not significantly increase the public's understanding of the operations and activities of the FBI. Accordingly, the FBI properly protected these individuals' privacy interests. [14]

**(b)(6)-4 and (b)(7)(C)-4**        **Names and/or Identifying Data of Third Parties of Investigative Interest**

(66)    In Categories (b)(6)-4 and (b)(7)(C)-4, the FBI protected the names and identifying information of third party individuals who were of investigative interest to the FBI. Being linked with any law enforcement investigation carries a strong negative connotation and a stigma. To release the identities of these individuals to the public in this context could subject them to harassment or embarrassment, as well as undue public attention, whether or not they ever actually committed a crime. Accordingly, the FBI has determined these individuals maintain a substantial privacy interest in not having their identities disclosed.

---

[14] Categories (b)(6)-3 and (b)(7)(C)-3 were asserted on the following Bates pages: FBI-18-CV-00967-21, 23, 28, 37-38, 101, and 209.

(67)    In making a determination whether to release the names and/or personal information concerning these third parties, the public's interest in disclosure was balanced against the individuals' right to privacy.  The FBI determined these individuals' identities would not significantly increase the public's understanding of FBI operations and activities.

(68)    Accordingly, the FBI concluded that these individuals' privacy interests outweigh a non-existent public interest.  The FBI therefore properly protected the names and identifying information of third parties of investigative interest[15]

### EXEMPTION 7(A) – PENDING LAW ENFORCEMENT PROCEEDINGS

(69)    Exemption 7(A) protects records or information compiled for law enforcement purposes when disclosure "could reasonably be expected to interfere with enforcement proceedings."  5 U.S.C. § 552(b)(7)(A).

(70)    Application of Exemption 7(A) requires: the existence of law enforcement records; a pending prospective law enforcement proceeding; and a reasonable expectation that release would interfere with the enforcement proceeding.

### (b)(7)(A)-1    Information Which, if Disclosed, Could Reasonably be Expected to Interfere with Pending Law Enforcement Proceedings

(71)    Typically, the FBI asserts Exemption 7(A) for a variety of different documents in an investigative file, which the FBI then groups into functional categories and describes in greater detail.  In this case, however, the FBI has asserted Exemption 7(A) in a limited fashion to protect the subjects and specific details of pending FBI investigations related to information prepared for various briefings between Director Comey and the President.  The release of this

---

[15] Categories (b)(6)-4 and (b)(7)(C)-4 were asserted on the following Bates pages: FBI-18-CV-00967-165, 178-182, 191, and 201-202.

information pertaining to on-going FBI investigations could result in the identification of suspects and specific non-public investigative details and thus jeopardize the investigations themselves. Thus, the FBI has applied Exemption 7(A) to protect this information.[16]

## EXEMPTION 7(E) – INVESTIGATIVE TECHNIQUES AND PROCEDURES

(72)    Exemption 7(E) protects records and information compiled for law enforcement purposes that "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552 (b)(7)(E).

(73)    Exemption 7(E) has been asserted to protect information from these documents, the release of which would disclose techniques and/or procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions, that could reasonably be expected to risk circumvention of the law. This exemption affords categorical protection to techniques and procedures used in law enforcement investigations; it protects techniques and procedures that are not well-known to the public as well as non-public details about the use of well-known techniques and procedures.

### (b)(7)(E)-1    Identity and/or Location of FBI or Joint Units, Squads, and Divisions

(74)    In Category (b)(7)(E)-1, the FBI protected the names, numbers, and alpha designators of certain sensitive FBI squads and units. Information identifying units and office locations is usually found in the administrative headings of internal FBI documents or at times

---

[16] Category (b)(7)(A)-1 was asserted on the following Bates pages: FBI-18-CV-00967-165, 178-183, and 205.

in the email signature blocks of FBI personnel assigned to these units; such information was reproduced in some instances in the responsive processing notes and search slips here. The existence of these particular squads and units is not known to the general public. Revealing their names, numbers, and alpha designators would reveal the level of focus the FBI has applied to certain areas within the assigned enforcement activity, and as relevant here, to the investigative realm of domestic and international terrorism.

(75)   While the harm of releasing the identity of a particular FBI operational unit may not be self-evident from the face of these records, the release of these unit identities could reasonably be expected to risk circumvention of the law as follows. Disclosure would provide a piece of information about the application and focus of FBI investigative capabilities and presence in the associated geographical area(s). This piece of information alone identifies the particular unit's internal designation, its geographical disposition, and its primary activity. When combined with other information in a mosaic fashion, this piece of information provides key insight into limited FBI resources that are employed in this type of enforcement activity in a particular area. If adversaries are provided the pieces necessary to construct this mosaic, then the method of the investigative process revealed by the mosaic would be disrupted and the FBI would be deprived of valuable information. For example, the knowledge that the FBI has an internal unit designation of "Squad X" in a particular area for a particular type of investigative activity could reasonably be applied by criminal elements or terrorists to plan and structure their activities in a manner that avoids detection and disruption by the FBI, thus enhancing their ability to circumvent the law. Because disclosure of this information could reasonably be expected to impede the FBI's effectiveness and potentially aid in circumvention of the law, the

30

FBI withheld this information pursuant to Exemption 7(E).[17]

### (b)(7)(E)-2      Sensitive Phone Number for Other Government Agency (OGA)

(76)      In Category (b)(7)(E)-2, the FBI protected a secure sensitive telephone number at the White House on Bates page FBI-18-CV-00967-77.  Release of this sensitive phone number could allow individuals either of investigative interest or otherwise to exploit the U.S. government secure communication systems – to gain unauthorized access to, view and manipulate data on, or otherwise interfere with the White House's non-public communication network with a the secure line to sensitive discussions with the President and other high level U.S. government officials.  Such actions could arm adversaries with the information or ability to circumvent the law or interfere with law enforcement or intelligence gathering activities.  Thus, the FBI properly protected this information from disclosure.[18]

### (b)(7)(E)-4      Collection / Analysis of Information

(77)      In Category (b)(7)(E)-4, the FBI protected methods that the FBI uses to collect and analyze the information that it obtains for investigative purposes.  The release of this information would disclose the identity of methods used in the collection and analysis of information, including how and from where the FBI collects information and the methodologies employed to analyze it once collected.  Such disclosures would enable subjects of FBI investigations to circumvent similar currently used techniques.

(78)      Specifically, on Bates pages FB-18-CV-00967-178 through 185, the FBI lists

---

[17] Category (b)(7)(E)-1 was asserted on the following Bates pages: FBI-18-CV-00967-68, 70, 163, 193, 199, and 246.

[18] Category (b)(7)(E)-2 was asserted on the following Bates page: FBI-18-CV-00967-77.

proposed "Talking Points for POTUS briefing" (*see* FBI-18-CV-00967-178) for which the entirety of the resultant information is redacted because the information details sensitive law enforcement information and techniques  and the manner in which the information was gathered, analyzed, and vetted for briefing the President.  The relative utility of these techniques could be diminished if the actual techniques were released in this matter because it would essentially shine a light on the circumstances under which specific techniques were used or requested and the usefulness of the information obtained therein.  Similarly, a detailed internal investigative report (Bates pages FBI-18-CV-00967-191 through 192) was withheld in its entirety because its release would compromise sensitive intelligence-gathering and law enforcement techniques the FBI uses to generate data to accomplish its mission.  Although only a few specific examples are provided here, release of this type of information, which was protected throughout this case, would enable criminals to educate themselves about the techniques employed for the collection and analysis of information.

(79)    Accordingly, because disclosure of these types of information would allow adversaries to take countermeasures to circumvent the effectiveness of these techniques, thereby allowing them to violate the law and engage in terrorist and criminal activities, the FBI has properly withheld this information.[19]

**(b)(7)(E)-5    Investigative Focus of Specific Investigations**

(80)    In Category (b)(7)(E)-5 to protect information that could potentially reveal the investigative focus of specific FBI domestic and international terrorism investigations.

---

[19] Category (b)(7)(E)-4 was asserted on the following Bates pages: FBI-18-CV-00967-165, 178-185, 191-192, 199, 201-202, 204-245, and 248-249. *See* also footnote 5, *supra.*

Revealing the broader investigative focuses, at times relating to interconnected investigations would reveal the scope of the FBI's programs and the strategies it plans to pursue in preventing and disrupting criminal and terrorist related activities. For example, Bates pages FBI-18-CV-00967-178 through 183 list detailed investigation strategies for specific investigations. And Bates Pages FBI-18-CV-00967-191-192 and 201-202 contain targeted information specific to a very limited number of investigations as well as information regarding how the FBI gathers information. Similarly, FBI-18-CV-00967-205 contains detailed investigative information describing the FBI's focus for action in specific cases. Release of this type of information would allow criminals and terrorists to gauge the FBI's strengths and weaknesses within certain areas of the criminal and terrorist arenas and structure their activities in a manner that avoids detection and disruption by the FBI. For example, if terrorists or criminals knew that certain individuals were being investigated based on their association with one particular individual, they would be able to discern that their association with this particular individual may cause them to become the subjects of an FBI investigation. They may then decide to cut ties with this individual and find different ways to pursue criminal and terrorist activities, thus circumventing the FBI's investigative efforts. Because releasing the focus of specific FBI national security investigations would enable criminals and terrorists to circumvent the law, this information is exempt from disclosure pursuant to Exemption 7(E).[20]

### (b)(7)(E)-6   Sensitive Database Information

(81)   In Category (b)(7)(E)-6, the FBI protected declassified information specifically gleaned from a non-public database used for official law enforcement purposes by the FBI

---

[20] Category (b)(7)(E)-5 was asserted on the following Bates pages: FBI-18-CV-00967-178-183, 191-192, 201-202, and 205.

and/or other law enforcement personnel on only one page – FBI-18-CV-00967-202. Specifically, the protected database is designed for collecting and sharing terrorism-related activities amongst law enforcement agencies across federal, state, local, tribal jurisdictions as well as national fusion center networks. This non-public database, therefore, serves as a repository for counterterrorism and investigative data. It allows law enforcement to query information and develop investigative leads from a variety of source data using state-of-the-art analytical tools. FBI personnel as well as task force members from local, state and other federal agencies have access to this database. Disclosure of the information directly gleaned from this database could educate criminals as to the types of information/evidence most useful to the FBI based on the nature of the FBI's investigative databases and the information they house. It would also reveal the FBI's capabilities and limitations governing what types of investigative information it can track and later query when developing investigative/law enforcement strategies. As relevant to Bates page FBI-18-CV-00967-202, this page is part of a full investigative report generated by the FBI analyzing information gathered from this sensitive database for a specific sensitive investigation; the report was withheld in full. Revealing the specific piece of information protected under this category would allow criminals to employ countermeasures to deprive the FBI of critical investigative data and/or predict FBI investigative responses in particular investigative situations, thus jeopardizing the FBI's investigative mission. Because disclosure would impede the FBI's effectiveness and potentially aid in circumvention of the law, the FBI properly withheld this information. [21]

**(b)(7)(E)-7    Sensitive File Numbers**

(82)    In Category (b)(7)(E)-7, the FBI protected sensitive case file numbers on four (4)

---

[21] Category (b)(7)(E)-6 was asserted on the following Bates page: FBI-18-CV-00967-202.

pages which the FBI has withheld in full – FBI-18-CV-00967-191-192 and 201-202. The FBI has determined that this exemption is appropriate for protecting these file numbers. FBI file numbers are created solely because of FBI investigations and as such the FBI has asserted protection for file numbers related to other sensitive criminal and/or national security investigations because those numbers exist solely because of the FBI's exercise of its law enforcement functions. Additionally, the release of the file numbering convention identifies the investigative interest or priority given to such matters. Applying a mosaic analysis, suspects could use these numbers (indicative of investigative priority), in conjunction with other information known about other individuals and/or techniques, to change their pattern of activity to avoid detection, apprehension, or create alibis for suspected activities, etc. It is the assemblage of file numbers that risks harm if disclosed, not generally a single classification code in total isolation.

(83)    This accumulation of file numbers is the crux of the "sensitive" term used here to describe the withheld file numbers or sub file names. The word "sensitive" in this context speaks to not only the potential harm to investigative focuses for future investigations categorized under these classification codes or the types of investigation which are taking or have already taken place, but also the circumvention of the law. To determine the sensitivity of certain file numbers, the FBI conducts a case-by-case analysis when determining whether to release a file number. Many factors go into this analysis such as the type or program under which the file number falls, whether the file is pending or closed, the subject or focus of the file, whether a file number has been previously released, and its interrelatedness with other criminal and/or national security investigations. These contextual factors become a type of litmus test to determine on a case-by-case basis if a file number can be released without harm or must be

redacted. In this case, the only mention of specific FBI file numbers were on these four pages, and through this litmus test the FBI determined these file numbers did meet the threshold for protection under FOIA Exemption 7(E). Thus, the FBI properly protected this information from disclosure.[22]

### (b)(7)(E)-8    Dates and Types of Investigations (Preliminary or Full Investigations)

(84)    In Category (b)(7)(E)-8, the FBI protected information pertaining to the types and dates of investigations referenced in four (4) pages at issue in this case – FBI-18-CV-00967-191-192 and 201-202. As evident from previous explanations, the FBI has protected various categories of information under Exemption 7(E) on these specific pages, which were withheld in full. In this category, the information withheld, when referenced in connection with the actual investigation at issue and not in general discussion, pertains to the type of investigation, whether it is a "preliminary" or "full" investigation and the date it was initiated. Disclosure of this information would allow individuals to determine the types of activities that would trigger a full investigation as opposed to merely a preliminary one, as well as the particular dates the investigation covers, which would allow individuals to adjust their behavior accordingly to circumvent the law. Moreover, the knowledge that a specific activity warrants investigation could likewise cause individuals to adjust their conduct to avoid detection. Because disclosure of this information could reasonably be expected to impede the FBI's effectiveness and potentially aid in circumvention of the law, the FBI has properly withheld this information.[23]

---

[22] Category (b)(7)(E)-7 was asserted on the following Bates pages: FBI-18-CV-00967-191-192 and 201-202.

[23] Category (b)(7)(E)-8 was asserted on the following Bates pages: FBI-18-CV-00967-191-192 and 201-202.

**(b)(7)(E)-9     FBI Internal Non-Public Intranet Email Addresses and Phone Numbers**

(85)     In Category (b)(7)(E)-9, the FBI protected internal non-public Intranet email addresses as well as phone numbers specific to the FBI on two (2) pages – FBI-18-CV-00967-194 and 200.  Release of these pieces of information could allow individuals to exploit the FBI's Information Technology system to gain unauthorized access to, view and manipulate data on, or otherwise interfere with the FBI's unclassified, but non-public Intranet protocol.  Such actions could arm individuals with the information or ability to circumvent the law by hacking or otherwise exploiting the FBI's system.  Additionally, release of this information would also allow individuals to disrupt official FBI business.  Thus, the FBI properly protected this information.[24]

## "OTHER NON-RESPONSIVE" CITATIONS

(86)     The FBI considers each individual message in an e-mail chain to be a separate record and therefore analyzes each individual message for both responsiveness and exemptions.  Because multiple topics may be addressed across the various messages in an e-mail chain, some messages may be responsive whereas others may not, depending on the specific parameters of a FOIA request.[25]   As relevant here, the FBI out-scoped non-responsive messages on Bates page FBI-18-CV-00967-11 and 12.  (The redactions are identified as "OTHER Non-responsive" on these pages.)  Additionally, the FBI out-scoped one page in full – FBI-18-CV-00967-78 – because it was comprised fully of individual e-mail messages that were not responsive to the FOIA requests at issue in this case.

---

[24] Category (b)(7)(E)-9 was asserted on the following Bates pages: FBI-18-CV-00967-194 and 200.

[25] The FBI does not "out-scope" on responsiveness grounds within an individual message.

## DOCUMENTS REFERRED TO OGA FOR CONSULTATION WITH THE FBI

(87)   The FBI also identified pages, some in their entireties and some in part, containing information and/or equities originating with the White House.  In accordance with DOJ regulations, 28 C.F.R. § 16.4(c), the FBI coordinated with this agency to determine how it wanted the FBI to treat their information contained within the responsive material.

### White House

(88)   On September 27, 2018, the FBI sent 22 pages to the White House for consultation – i.e., Bates pages FBI-CV-00967-111-112, 114-116, 127-134, 144, 160-161, 163-164, 166-168 and 246.  On October 30, 2018, the White House responded to the consultation request and asked that certain information be withheld to FOIA Exemptions (b)(5) and (b)(6) on all pages except Bates pages FBI-CV-00967-166 through 168 (these specific pages were released in full).  The White advised that it protected certain information pursuant to Exemption 5 for the following reasons, *infra*.

### *Bates 111-112*

(89)   This document, an email chain regarding a meeting between the President and agency officials organized by the National Security Council staff, contains information withheld under FOIA Exemption 5, 5 U.S.C. 552(b)(5), pursuant to the presidential communications privilege.  The withheld information relates to confidential advice provided directly to the President and his close advisors regarding a national security topic.  Release of this information would reveal the process by which the President receives national security advice from close advisors as directed by President Obama under Presidential Policy Directive-1 (Organization of the National Security Council System), and would reveal information about the advice itself.  This document also contains information withheld under FOIA Exemption 6, 5 U.S.C. 552(b)(6).

38

*Bates 114*

(90)    This document, an email chain regarding a meeting between the President and agency officials organized by the National Security Council staff, contains information withheld under FOIA Exemption 5, 5 U.S.C. 552(b)(5), pursuant to the presidential communications privilege. The withheld information relates to the topics of confidential advice provided directly to the President and his close advisors. Release of this information would reveal the process by which the President receives national security advice from close advisors as directed by President Obama under Presidential Policy Directive-1 (Organization of the National Security Council System), and would reveal information about the advice itself. This document also contains information withheld under FOIA Exemption 6, 5 U.S.C. 552(b)(6).

*Bates 115-116*

(91)    This document, an email chain regarding a secure telephone call between the President and agency officials organized by the National Security Council staff, contains information withheld under FOIA Exemption 5, 5 U.S.C. 552(b)(5), pursuant to the presidential communications privilege. The withheld information relates to the topics of confidential advice provided directly to the President and his close advisors. Release of this information would reveal the process by which the President receives national security advice from close advisors as directed by President Obama under Presidential Policy Directive-1 (Organization of the National Security Council System), and would reveal information about the advice itself. This document also contains information withheld under FOIA Exemption 6, 5 U.S.C. 552(b)(6).

*Bates 127*

(92)    This document, an email chain regarding a discussion of a meeting with President Obama on 11/25/2015, is withheld in part under FOIA Exemption 6, 5 U.S.C. 552(b)(6).

*Bates 129-131, 132-134*

(93)    This document, an email chain regarding a meeting between the President and agency officials organized by the National Security Council staff, contains information withheld under FOIA Exemption 5, 5 U.S.C. 552(b)(5), pursuant to the presidential communications privilege. The withheld information relates to the confidential advice provided directly to the President and his close advisors regarding a national security topic. Release of this information would reveal the process by which the President receives national security advice from close advisors as directed by President Obama under Presidential Policy Directive-1 (Organization of the National Security Council System), and would reveal information about the advice itself. This document also contains information withheld under FOIA Exemption 6, 5 U.S.C. 552(b)(6).

*Bates 144*

(94)    This document, an email chain regarding meetings held by the President with agency officials and organized by the White House Chief of Staff, contains information withheld under FOIA Exemption 5, 5 U.S.C. 552(b)(5), pursuant to the presidential communications privilege. The withheld information relates to confidential advice provided directly to the President and his close advisors regarding a national security topics. Release of this information would reveal the process by which the President receives national security advice from close advisors, and would reveal information about the advice itself. This document also contains information withheld under FOIA Exemption 6, 5 U.S.C. 552(b)(6).

*Bates 160-161*

(95)    This document, an email chain regarding a discussion of press strategy, is withheld in part under FOIA Exemption 6, 5 U.S.C. 552(b)(6).

*Bates 163-164*

(96)    This document, an email chain regarding a meeting between the President and agency officials organized by the National Security Council staff, contains information withheld under FOIA Exemption 5, 5 U.S.C. 552(b)(5), pursuant to the presidential communications privilege. The withheld information relates to confidential advice provided directly to the President and his close advisors regarding a national security topic. Release of this information would reveal the process by which the President receives national security advice from close advisors, and would reveal information about the advice itself.

*Bates 246*

(97)    This document, an email chain regarding a meeting between the White House Chief of Staff and cabinet officials organized by White House staff, contains information withheld under FOIA Exemption 5, 5 U.S.C. 552(b)(5), pursuant to the presidential communications privilege. The withheld information relates to confidential advice provided to the President's close advisors regarding a national security topic. Release of this information would reveal the process by which the President receives national security advice from close advisors, and would reveal information about the advice itself. This document also contains information withheld under FOIA Exemption 6, 5 U.S.C. 552(b)(6).

## **SEGREGABILITY**

(98)    As discussed previously, the FBI located 264 total responsive pages. Of these, 20 pages were released to Plaintiffs in full; 128 pages were released to Plaintiffs in part; and 116 pages were withheld in full.

A. <u>Pages Released in Part</u>. Following the segregability review, RIDS determined that 128 pages could be released in part with redactions per the identified FOIA

41

exemptions herein.  These pages comprise a mixture of material that the FBI was able, with reasonable efforts, to segregate for release to Plaintiffs and material that was redacted because its release would trigger foreseeable harm to one or more interests protected by the cited FOIA exemptions on these pages.

B. <u>Pages Withheld in Full</u>.  RIDS withheld 116 pages in full.  Of these, 1 page[26] was withheld in its entirety it contained email records not responsive to the FOIA request, and thus is not within the scope of Plaintiffs' requests.  An additional 53 pages[27] were withheld because they were duplicates of other pages processed for release to Plaintiffs in this case.  Finally, RIDS withheld in full <u>62</u> pages[28] pursuant to FOIA exemptions.  RIDS determined that any non-exempt information on these 62 pages was so intertwined with exempt material, that no information could be reasonably segregated for release.  Any further segregation of this intertwined material would employ finite resources only to produce disjointed words, phrases, or sentences, that taken separately or together, would have minimal or no informational content.

## CONCLUSION

(99)  The FBI performed adequate and reasonable searches for responsive records;

---

[26] The FBI withheld the following Bates page as "Other – Non-responsive": FBI-18-CV-00967-78.

[27] The FBI withheld the following Bates pages because they were duplicative of other responsive pages: FBI-18-CV-00967-1, 3-6, 9-10, 19-20, 27, 29, 31-36, 58, 61, 63-64, 67, 69, 81-82, 87, 90, 93-96, 105, 135-136, 142, 145, 154, 169-173, 176-177, 186-190, and 195-198.

[28] The FBI withheld the following Bates pages because the information therein was fully covered by one or more of the FOIA Exemptions discussed, *supra*: FBI-18-CV-00967-138, 146-153, 179-180, 182-185, 191-192, 201-202, 204-211, 213-245, and 248-249.

processed all such records and released all reasonably segregable non-exempt information from documents responsive to Plaintiffs' FOIA requests that are subject to FOIA. The FBI processed the records under the access provisions of the FOIA to achieve maximum disclosure. The FBI segregated and released as much information as possible from the processed records consistent with the access provisions of the FOIA. No reasonably segregable, nonexempt portions have been withheld from Plaintiffs. The FBI properly withheld information from these records pursuant to FOIA Exemptions (b)(1), (b)(3), (b)(5), (b)(6), (b)(7)(C), (b)(7)(A), and (b)(7)(E). The FBI carefully examined the documents and determined that the information withheld from Plaintiffs in this case, if disclosed: would reveal classified and statutorily protected information; would reveal privileged information; would cause a clearly unwarranted invasion of the personal privacy, or could reasonably be expected to constitute an unwarranted invasion of personal privacy; could reasonably be expected to interfere with pending or prospective enforcement proceedings; and/or would disclose techniques and procedures for law enforcement investigations. After extensive review of the documents at issue, I have determined that there is no further non-exempt information that can be reasonably segregated and released without revealing exempt information.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct, and that Exhibits A through K attached hereto are true and correct copies.

Executed this 22 day of March 2019.

DAVID M. HARDY
Section Chief
Record/Information Dissemination Section
Information Management Division
Federal Bureau of Investigation
Winchester, Virginia

44

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| JUDICIAL WATCH, INC, | ) | |
| DAILY CALLER NEWS FOUNDATION, | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 1:18-cv-00967-CKK |
| DEPARTMENT OF JUSTICE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

# Exhibit A



**Judicial Watch®**
*Because no one is above the law!*

May 22, 2017

**VIA CERTIFIED MAIL**

FBI
Record/Information Dissemination Section
Attn: FOIPA Request
170 Marcel Drive
Winchester, VA 22602-4843

**Re:  Freedom of Information Act Request**

Dear Freedom of Information Officer:

Judicial Watch, Inc. ("Judicial Watch") hereby requests that the Federal Bureau of Investigation ("FBI") produce the following records pursuant to the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"):

1. Any and all records (sometimes referred to as "memoranda to the file," "memoranda for record," and other variants) written or ordered written by FBI Director James Comey summarizing his conversations with any of the following individuals:

   - Barack Obama
   - Joe Biden
   - Hillary Clinton
   - Senator Chuck Schumer
   - Representative Nancy Pelosi
   - Senator John McCain

2. Any and all handwritten notes used as the basis for preparing any records responsive to Bullet 1.

   The time frame for the requested records is September 4, 2013 to May 9, 2017.

Please determine whether to comply with this request within the time period required by FOIA and notify us immediately of your determination, the reasons therefor, and the right to appeal any adverse determination to the head of the agency or his or her designee.  5 U.S.C.  § 552(a)(6)(i).  Please also produce all responsive records in an electronic format ("pdf" is preferred), if convenient.  We also are willing to accept a "rolling production" of responsive records if it will facilitate a more timely production.

FBI/FOIA Request
May 22, 2017
Page 2 of 3

Judicial Watch also hereby requests a waiver of both search and duplication fees. We are entitled to a waiver of search fees because we are a "representative of the news media." *See* 5 U.S.C. § 552(a)(4)(A)(ii)(II); *see also Cause of Action v. Federal Trade Comm.*, 799 F.3d 1108 (D.C. Cir. 2015); *Nat'l Sec. Archive v. U.S. Dep't of Defense*, 880 F.2d 1381 (D.C. Cir. 1989). For more than twenty years, Judicial Watch has used FOIA and other investigative tools to gather information about the operations and activities of government, a subject of undisputed public interest. We submit over 400 FOIA requests annually. Our personnel, which includes experienced journalists and professional writers on staff and under contract, use their editorial skills to turn this raw information into distinct works that are disseminated to the public via our monthly newsletter, which has a circulation of over 300,000, weekly email update, which has over 600,000 subscribers, investigative bulletins, special reports, www.judicialwatch.org website, *Corruption Chronicles* blog, and social media, including Facebook and Twitter, among other distribution channels. We have authored several books, including *Corruption Chronicles* by Tom Fitton (Threshold Editions, July 24, 2012), and another book, *Clean House* by Tom Fitton (Threshold Editions, Aug. 30, 2016), is forthcoming. In 2012, we produced a documentary film, "District of Corruption," directed by Stephen K. Bannon. Our "news media" status has been confirmed in court rulings. *See, e.g., Judicial Watch, Inc. v. U.S. Dep't of Defense*, 2006 U.S. Dist. LEXIS 44003, *1 (D.D.C. June 28, 2006); *Judicial Watch, Inc. v. U.S. Dep't of Justice*, 133 F. Supp.2d 52 (D.D.C. 2000). As a tax exempt, 501(c)(3) non-profit corporation, we have no commercial interests and do not seek the requested records for any commercial use. Rather, we intend to use the requested records as part of our on-going investigative journalism and public education efforts to promote integrity, transparency, and accountability in government and fidelity to the rule of law.

Judicial Watch also is entitled to a waiver of both search fees and duplication fees because "disclosure of the information is in the public interest." 5 U.S.C. § 552(a)(4)(A)(iii). Disclosure of the requested records undoubtedly will shed light on "the operations or activities of the government." *Cause of Action*, 799 F.3d at 1115 (*quoting* 5 U.S.C. § 552(a)(4)(A)(iii)). Disclosure also is "likely to contribute significantly to the public understanding" of those operations or activities because, among other reasons, Judicial Watch intends to disseminate both the records and its findings to "a reasonably broad audience of persons interested in the subject" via its newsletter, email updates, investigative bulletins, website, blog, and its other, regular distribution channels. *Cause of Action*, 799 F.3d at 1116 (*quoting Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 815 (2d Cir. 1994)). Again, Judicial Watch does not seek the requested records for any commercial benefit or for its own "primary" benefit, but instead seeks them as part of its ongoing investigative journalism and public education efforts to promote integrity, transparency, and accountability in government and fidelity to the rule of law.

In the event our request for a waiver of search and/or duplication costs is denied, Judicial Watch agrees to pay up to $300.00 in search and/or duplication costs. Judicial Watch requests that it be contacted before any such costs are incurred, in order to

**FBI/FOIA Request**
**May 22, 2017**
**Page 3 of 3**

prioritize search and duplication efforts.

If you do not understand this request or any portion thereof, or if you feel you require clarification of this request or any portion thereof, please contact us immediately at 202-646-5172 or bmarshall@judicialwatch.org.

Thank you for your cooperation.

Very respectfully,

William F. Marshall
Judicial Watch, Inc.



**Judicial Watch**®
*Because no one
is above the law!*



**CERTIFIED MAIL**®

7015 1520 0001 1516 4717

FBI
Record/Information Dissemination
Section
Attn: FOIPA Request
170 Marcel Drive
Winchester, VA 22602-4843

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| JUDICIAL WATCH, INC, | ) | |
| DAILY CALLER NEWS FOUNDATION, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 1:18-cv-00967-CKK |
| DEPARTMENT OF JUSTICE, | ) | |
| | ) | |
| Defendant. | ) | |

# Exhibit B



**U.S. Department of Justice**

**Federal Bureau of Investigation**
*Washington, D.C. 20535*

May 25, 2017

MR. WILLIAM F. MARSHALL
JUDICIAL WATCH
SUITE 800
425 THIRD STREET, SOUTHWEST
WASHINGTON, DC 20024

FOIPA Request No.: 1374674-000
Subject: Records and/or Notes on Memos by
Former FBI Director James Comey
(September 4, 2013 – May 9, 2017)

Dear Mr. Marshall:

This acknowledges receipt of your Freedom of Information Act (FOIA) request to the FBI.

☑ Your request has been received at FBI Headquarters for processing.

☐ Your request has been received at the _____ Resident Agency / _____ Field Office and forwarded to FBI Headquarters for processing.

☐ The subject of your request is currently being processed for public release.   Documents will be released to you upon completion.

☐ Release of responsive records will be made to the FBI's FOIA Library (The Vault), http:/vault.fbi.gov, and you will be contacted when the release is posted.

☑ Your request for a fee waiver is being considered and you will be advised of the decision at a later date.   If your fee waiver is denied, you will be charged fees in accordance with the category designated below.

☑ For the purpose of assessing fees, we have made the following determination:

☐ As a commercial use requester, you will be charged applicable search, review, and duplication fees in accordance with 5 USC § 552 (a)(4)(A)(ii)(I).

☑ As an educational institution, noncommercial scientific institution or representative of the news media requester, you will be charged applicable duplication fees in accordance with 5 USC § 552 (a)(4)(A)(ii)(II).

☐ As a general (all others) requester, you will be charged applicable search and duplication fees in accordance with 5 USC § 552 (a)(4)(A)(ii)(III).

Please check the status of your FOIPA request at www.fbi.gov/foia by clicking on **FOIPA Status** and entering your FOIPA Request Number.   Status updates are adjusted weekly.   The status of newly assigned requests may not be available until the next weekly update.   If the FOIPA has been closed the notice will indicate that appropriate correspondence has been mailed to the address on file.

For questions regarding our determinations, visit the www.fbi.gov/foia website under "Contact Us." The FOIPA Request number listed above has been assigned to your request.   Please use this number in all correspondence concerning your request.   Your patience is appreciated.

You may file an appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, Suite 11050, 1425 New York Avenue, NW, Washington, D.C. 20530-0001, or you may submit an appeal through OIP's FOIAonline portal by creating an account on the following web site:  https://foiaonline.regulations.gov/foia/action/public/home.   Your appeal must be postmarked or electronically transmitted within ninety (90) days from the date of this letter in order to be considered timely. If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."   Please cite the FOIPA Request Number assigned to your request so that it may be easily identified.

You may seek dispute resolution services by contacting the Office of Government Information Services (OGIS) at 877-684-6448, or by emailing ogis@nara.gov.   Alternatively, you may contact the FBI's FOIA Public Liaison by emailing foipaquestions@ic.fbi.gov.   If you submit your dispute resolution correspondence by email, the subject heading should clearly state "Dispute Resolution Services."   Please also cite the FOIPA Request Number assigned to your request so that it may be easily identified.

Sincerely,

David M. Hardy
Section Chief,
Record/Information
   Dissemination Section
Records Management Division

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JUDICIAL WATCH, INC, <br> DAILY CALLER NEWS FOUNDATION, <br><br><br> Plaintiffs, <br><br> v. <br><br> DEPARTMENT OF JUSTICE, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No. 1:18-cv-00967-CKK <br> ) <br> ) <br> ) <br> ) |

# Exhibit C

----START MESSAGE---- Subject: eFOIA Request Received Sent: 2018-02-16T17:07:25.219212+00:00 Status: pending Message:

## Organization Representative Information

| | |
|---|---|
| Organization Name | Daily Caller News Foundation |
| Prefix | |
| First Name | Richard |
| Middle Name | |
| Last Name | Pollock |
| Suffix | |
| Email | rpollockdc@gmail.com |
| Phone | 703-593-7287 |
| Location | United States |

## Domestic Address

| | |
|---|---|
| Address Line 1 | 1920 L Street, NW |
| Address Line 2 | |
| City | Washington |
| State | District of Columbia |
| Postal | 20015 |

## Agreement to Pay

How you will pay: I am requesting a fee waiver for my request and have reviewed the FOIA reference guide. If my fee waiver is denied, I would like to limit my request to the two free hours of searching and 100 duplicated pages.

## Proof Of Affiliation for Fee Waiver

Waiver Explanation:

The Daily Caller News Foundation is an accredited news organization based in Washington, D.C.
Our reporters are accredited with the White House, the U.S. Congress, the Pentagon

The DCNF and its sister news organization The Daily Caller enjoy a large public readership. Currently the monthly website traffic exceeds 15 million unique visitors.

The information we seek is in the public interest. Former Director Comey's meetings with the President is a significant issue for both the U.S. Congress and the general public.

Documentation Files

## Non-Individual FOIA Request

Request Information

This is a Freedom of Information Act request by the Daily Caller News Foundation seeking records that identify and describe all meetings between former FBI Director James Comey and President Barack Obama. This records request is for all meetings with President Obama alone or with meetings with the President in the company of other administration officials.

In a January 20, 2016 email to the record by Susan Rice, the White House national security advisor, stated that Director Comey met on January 5, 2017 with the President, Vice President Joe Biden, Deputy Attorney General Sally Yates, along with Rice.

The Director did not mention this meeting in his June 8, 2017 testimony before the Senate Select Committee on Intelligence.

Senators Chuck Grassley and Lindsey Graham sent a letter to Ms. Rice on February 8, 2018 about this previously unreported meeting between the President and the former bureau director.

A copy of the letter by both Senators can be viewed through this link:
https://www.grassley.senate.gov/news/news-releases/grassley-graham-uncover-unusual-email-sent-susan-rice-herself-

The Daily Caller News Foundation is requesting all records that memorialize and describe the meetings between Director Comey and the President, along with meetings with the President in the company of other administration officials.

The records include all logs, director appointment schedules, emails and memos outlining the meetings with the former President along with administration officials,

The documents should list the date of the meeting, location, topic and meeting participants.

This request includes any emails or memos describing the meetings and its topics.

As a news organization, we request a waiver of all fees related to this request.

Please feel free to contact me as the representative for the Foundation to discuss this FOIA request.

## Expedite

Expedite Reason

The issue of Director Comey's meetings with President Obama is a key troubling issue for Senate Judiciary Chairman Chuck Grassley and subcommittee Chairman Lindsey Graham as stated in their February 8, 2018 letter.

In their letter, they ask former White House national security advisor Susan Rice to respond by February 22, 2018. This indicates the importance attached by Chairmen Grassley and Graham for an expedited public review of these meetings.

In light of their letter, we believe it is in the public interest for the bureau to expedite this FOIA request.

-----END MESSAGE-----

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JUDICIAL WATCH, INC, <br> DAILY CALLER NEWS FOUNDATION, <br><br> Plaintiffs, <br><br> v. <br><br> DEPARTMENT OF JUSTICE, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> )   Case No. 1:18-cv-00967-CKK <br> ) <br> ) <br> ) <br> ) <br> ) |

# Exhibit D



**U.S. Department of Justice**

**Federal Bureau of Investigation**
*Washington, D.C. 20535*

February 26, 2018

MR. RICHARD POLLOCK
THE DAILY CALLER NEWS FOUNDATION
1920 L STREET, NW
WASHINGTON, DC 20015

FOIPA Request No.: 1396901-000
Subject: Records on All Meetings between
Former FBI Director James Comey and
President Barack Obama

Dear Mr. Pollock:

This acknowledges receipt of your Freedom of Information Act (FOIA) request to the FBI.   Below you will find check boxes and informational paragraphs about your request, as well as specific determinations required by these statutes.   Please read each one carefully.

- ☑ Your request has been received at FBI Headquarters for processing.

- ☑ You submitted your request via the FBI's eFOIPA system.

  - ☑ We have reviewed your request. Consistent with the FBI eFOIPA terms of service, future correspondence about your FOIA request will be provided in an email link.

  - ☐ We have reviewed your request. Consistent with the FBI eFOIPA terms of service, future correspondence about your FOIPA request will be sent through standard mail.

- ☐ The subject of your request is currently being processed and documents will be released to you upon completion.

- ☐ Release of responsive records will be posted to the FBI's electronic FOIA Library (The Vault), http:/vault.fbi.gov, and you will be contacted when the release is posted.

- ☑ Your request for a public interest fee waiver is under consideration, and you will be advised of the decision at a later date.   If your fee waiver is not granted, you will be responsible for applicable fees per your designated requester fee category below.

- ☑ For the purpose of assessing any fees, we have determined:

  - ☐ As a commercial use requester, you will be charged applicable search, review, and duplication fees in accordance with 5 USC § 552 (a)(4)(A)(ii)(I).

  - ☑ As an educational institution, noncommercial scientific institution or representative of the news media requester, you will be charged applicable duplication fees in accordance with 5 USC § 552 (a)(4)(A)(ii)(II).

  - ☐ As a general (all others) requester, you will be charged applicable search and duplication fees in accordance with 5 USC § 552 (a)(4)(A)(ii)(III).

Please check the status of your FOIPA request at www.fbi.gov/foia by clicking on **FOIPA Status** and entering your FOIPA Request Number.   Status updates are adjusted weekly.   The status of newly assigned requests may not be available until the next weekly update.   If the FOIPA has been closed the notice will indicate that appropriate correspondence has been mailed to the address on file.

For questions regarding our determinations, visit the www.fbi.gov/foia website under "Contact Us." The FOIPA Request number listed above has been assigned to your request.   Please use this number in all correspondence concerning your request.

You may file an appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, Suite 11050, 1425 New York Avenue, NW, Washington, D.C. 20530-0001, or you may submit an appeal through OIP's FOIA online portal by creating an account on the following web site:  https://foiaonline.regulations.gov/foia/action/public/home.   Your appeal must be postmarked or electronically transmitted within ninety (90) days from the date of this letter in order to be considered timely. If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."   Please cite the FOIPA Request Number assigned to your request so it may be easily identified.

You may seek dispute resolution services by contacting the Office of Government Information Services (OGIS) at 877-684-6448, or by emailing ogis@nara.gov.   Alternatively, you may contact the FBI's FOIA Public Liaison by emailing foipaquestions@fbi.gov.   If you submit your dispute resolution correspondence by email, the subject heading should clearly state "Dispute Resolution Services."   Please also cite the FOIPA Request Number assigned to your request so it may be easily identified.

Sincerely,

David M. Hardy
Section Chief,
Record/Information
   Dissemination Section
Records Management Division

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| JUDICIAL WATCH, INC, DAILY CALLER NEWS FOUNDATION, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Case No. 1:18-cv-00967-CKK |
| DEPARTMENT OF JUSTICE, | ) ) | |
| Defendant. | ) ) | |

# Exhibit E



**U.S. Department of Justice**

**Federal Bureau of Investigation**

*Washington, D.C. 20535*

February 26, 2018

MR. RICHARD POLLOCK
THE DAILY CALLER NEWS FOUNDATION
1920 L STREET, NW
WASHINGTON, DC 20015

FOIPA Request No.: 1396901-000
Subject: Records on All Meetings between Former FBI
Director James Comey and President Barack Obama

Dear Mr. Pollock:

This is in reference to your letter to the FBI, in which you requested expedited processing for the above-referenced Freedom of Information Act (FOIA) request.   Under Department of Justice (DOJ) standards for expedited processing, it can only be granted in the following situations:

**28 C.F.R. §16.5 (e)(1)(i):** "Circumstances in which the lack of expedited treatment could reasonably be expected to pose an imminent threat to the life or physical safety of an individual."

**28 C.F.R. §16.5 (e)(1)(ii):** "An urgency to inform the public about an actual or alleged federal government activity, if made by a person primarily engaged in disseminating information."

**28 C.F.R. §16.5 (e)(1)(iii):** "The loss of substantial due process of rights."

**28 C.F.R. §16.5 (e)(1)(iv):** "A matter of widespread and exceptional media interest in which there exists possible questions about the government's integrity which affects public confidence."

You have not provided enough information concerning the statutory requirements permitting expedition; therefore, your request is denied.

For questions regarding our determinations, visit the www.fbi.gov/foia website under "Contact Us." The FOIPA Request number listed above has been assigned to your request.   Please use this number in all correspondence concerning your request.   Your patience is appreciated.

You may file an appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, Suite 11050, 1425 New York Avenue, NW, Washington, D.C. 20530-0001, or you may submit an appeal through OIP's FOIAonline portal by creating an account on the following web site:  https://foiaonline.regulations.gov/foia/action/public/home.   Your appeal must be postmarked or electronically transmitted within ninety (90) days from the date of this letter in order to be considered timely.   If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal." Please cite the FOIPA Request Number assigned to your request so that it may be easily identified.

You may seek dispute resolution services by contacting the Office of Government Information Services (OGIS) at 877-684-6448, or by emailing ogis@nara.gov.   Alternatively, you may contact the FBI's FOIA Public Liaison by emailing foipaquestions@fbi.gov.   If you submit your dispute resolution correspondence by email, the subject heading should clearly state "Dispute Resolution Services."   Please also cite the FOIPA Request Number assigned to your request so that it may be easily identified.

Sincerely,

David M. Hardy
Section Chief
Record/Information
   Dissemination Section
Records Management Division

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| JUDICIAL WATCH, INC, | ) | |
| DAILY CALLER NEWS FOUNDATION, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 1:18-cv-00967-CKK |
| DEPARTMENT OF JUSTICE, | ) | |
| | ) | |
| Defendant. | ) | |

# Exhibit F

**Appeal Details**                                    Status : *Initial Evaluation*   Due Date : *03/28/2018*
**Request Type :** *FOIA*                                                              ◇  0



Submitted    Evaluation    Assignment    Processing    Closed

## Appeal Details

Tracking Number : DOJ-AP-2018-003018                    Submitted Date : 02/28/2018
Requester : Mr. Richard Pollock                         Received Date : 02/28/2018
Organization : Daily Caller                          Last Assigned Date : 02/28/2018
Requester Has Account : Yes                                Appeal Track : TBD
Created on behalf of : N/A                                    Due Date : 03/28/2018
Email Address : rpollockdc@gmail.com                       Assigned To : Appeals
Phone Number : 703-593-7287                        Last Assigned By : N/A
Fax Number : N/A
Address : 1920 L Street, NW
Suite 200
City : Washington
State/Province : DC
Zip Code/Postal Code : 20036

## Request Details

Tracking Number : 1396901-000                          Request Phase : Submitted
Requester : Richard P. Pollock                         Request Track : Expedited
Date Submitted : 02/06/2018                         Final Disposition : Pending
Request Description :

This is a request for an expediting processing of documents under 28 CFR 16.5 (e)(1)(iv). The rule is that expedited processing can be granted if the document relates to "a matter of widespread and exceptional media interest in which there exists possible questions about the government's integrity which affects public confidence."

| Submission Details | Case File | Admin Cost | Assigned Tasks | Comments (1) | Review |

## Appeal Handling

Requester Info Available to    No              Appeal Received : Yes
the Public :                                   Received Date : 02/28/2018
Appeal Track : Select Track      Acknowledgement Sent Date :
Fee Category : N/A                        5 Day Notifications : ☐
Based on Fee Waiver : ☐                       Litigation : No
Based on Expedited ☐
Processing :
Expedited Processing   Yes
Requested :
Expedited Processing Status : Pending Decision

## Basis for Appeal

Short Description :

According to the Senate Judiciary Committee, Director James Comey misled Congress when he said he only met with President Obama once. It turns out this was false. The requested documents go to the heart of the integrity and truthfulness of Dir. Comey. It also will provide the public with a greater understanding of Dir. Comey's relationship with

President Obama concerning the unmasking of Trump officials, the use by the FBI of the "Trump Dossier" and FISA Court filings. My article in the Daily Caller describes the importance of Dir. Comey's truthfulness is attached here: http://dailycaller.com/2018/02/13/comey-obama-secret-meeting/. The concern expressed by Senators Chuck Grassley and Lindsey Graham's is highlighted in this correspondence from them to former national security advisor Susan Rice: https://www.judiciary.senate.gov/imo/media/doc/2018-02-08%20CEG%20LG%20to%20Rice%20(Russia%20Investigation%20Email).pdf

Basis Available to the Public : No ▾          Has Basis Been Modified? ☐

## Additional Information

Source Request Tracking Number : 1396901-000

Expedited Type : Type 2 ▾

Sub-Office : Federal Bureau of Investigation ▾

## Attached Supporting Files

No supporting files have been added.

## Upload Supporting Files

No attachments have been added.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| JUDICIAL WATCH, INC, | ) | |
| DAILY CALLER NEWS FOUNDATION, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 1:18-cv-00967-CKK |
| DEPARTMENT OF JUSTICE, | ) | |
| | ) | |
| Defendant. | ) | |

# Exhibit G

1425 New York Avenue N.W.
Suite 11050
Washington, DC 20005

Richard Pollock
Daily Caller
1920 L Street, NW
Suite 200
Washington, DC 20036

February 28, 2018

Dear Mr. Richard Pollock,

This is to advise you that your administrative appeal from the action of the FBI regarding Request No. 1396901-000 was received by this Office on 02/28/2018.

The Office of Information Policy has the responsibility of adjudicating such appeals.  In an attempt to afford each appellant equal and impartial treatment, we have adopted a general practice of assigning appeals in the approximate order of receipt.  Your appeal has been assigned number DOJ-AP-2018-003018.  Please mention this number in any future correspondence to this Office regarding this matter. Please note that if you provide an e-mail address or another electronic means of communication with your request or appeal, this Office may respond to your appeal electronically even if you submitted your appeal to this Office via regular U.S. Mail.

We will notify you of the decision on your appeal as soon as we can.  If you have any questions about the status of your appeal, you may contact me at (202) 514-3642.  If you have submitted your appeal through FOIAonline, you may also obtain an update on the status of your appeal by logging into your account.

Sincerely,

**PRISCILLA JONES**

Digitally signed by PRISCILLA JONES
Date: 2018.02.28 16:02:10 -05'00'

Priscilla Jones

Supervisory Administrative Specialist

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| JUDICIAL WATCH, INC, | ) | |
| DAILY CALLER NEWS FOUNDATION, | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 1:18-cv-00967-CKK |
| DEPARTMENT OF JUSTICE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

# Exhibit H



**U.S. Department of Justice**

Office of Information Policy

*Suite 11050*

*1425 New York Avenue, NW*

*Washington, DC  20530-0001*

*Telephone: (202) 514-3642*

Mr. Richard Pollock
Daily Caller
Suite 200
1920 L Street, NW
Washington, DC  20036
rpollockdc@gmail.com

Re:    Appeal No. DOJ-AP-2018-003018
        Request No. 1396901
        SRO:JNW

**VIA:  FOIAonline**

Dear Mr. Pollock:

You appealed from the action of the Federal Bureau of Investigation on your Freedom of Information Act request for access to records concerning all meetings between former FBI Director James Comey and President Barack Obama.

I have been informed that you filed a lawsuit concerning the FBI's action in the United States District Court for the District of Columbia.  As indicated in the Department of Justice's regulations located at 28 C.F.R. § 16.8(b)(2) (2017), an appeal ordinarily will not be acted upon by this Office if the FOIA request becomes the subject of litigation.  For this reason, I am closing your appeal file in this Office.

If you have any questions regarding the action this Office has taken on your appeal, you may contact this Office's FOIA Public Liaison for your appeal.  Specifically, you may speak with the undersigned agency official by calling (202) 514-3642.

Sincerely,

5/16/2018

X  *Sean O'Neill*

Sean R. O'Neill
Chief, Administrative Appeals Staff
Signed by: OIP

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| JUDICIAL WATCH, INC, | ) | |
| DAILY CALLER NEWS FOUNDATION, | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 1:18-cv-00967-CKK |
| DEPARTMENT OF JUSTICE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

# Exhibit I



**U.S. Department of Justice**

**Federal Bureau of Investigation**
*Washington, D.C. 20535*

August 30, 2018

MR. WILLIAM F. MARSHALL
JUDICIAL WATCH, INC.
SUITE 800
425 THIRD STREET, SOUTHWEST
WASHINGTON, DC 20024

FOIPA Request Nos.: 1374674-000 and 1396901-000
Civil Action No.: 18-CV-00967
Subject: James Comey Memos and Meetings with
President Obama, Et Al.

Dear Mr. Marshall:

The enclosed documents were reviewed under the Freedom of Information/Privacy Acts (FOIPA), Title 5, United States Code, Section 552/552a.   Below you will find check boxes under the appropriate statute headings which indicate the types of exemptions asserted to protect information exempt from disclosure.   The appropriate exemptions are noted on the enclosed pages next to redacted information.   In addition, a deleted page information sheet was inserted to indicate where pages were withheld entirely and identify which exemptions were applied.   The checked exemption boxes used to withhold information are further explained in the enclosed Explanation of Exemptions.

|  | **Section 552** |  | **Section 552a** |
|---|---|---|---|
| ☐ (b)(1) | ☐ (b)(7)(A) | ☐ (d)(5) |
| ☐ (b)(2) | ☐ (b)(7)(B) | ☐ (j)(2) |
| ☐ (b)(3) | ☑ (b)(7)(C) | ☐ (k)(1) |
|  | ☐ (b)(7)(D) | ☐ (k)(2) |
|  | ☑ (b)(7)(E) | ☐ (k)(3) |
|  | ☐ (b)(7)(F) | ☐ (k)(4) |
| ☐ (b)(4) | ☐ (b)(8) | ☐ (k)(5) |
| ☑ (b)(5) | ☐ (b)(9) | ☐ (k)(6) |
| ☑ (b)(6) |  | ☐ (k)(7) |

110 page(s) were reviewed and 70 page(s) are being released.

Below you will also find additional informational paragraphs about your request.   Where applicable, check boxes are used to provide you with more information about the processing of your request.   Please read each item carefully.

☑ Document(s) were located which originated with, or contained information concerning, other Government Agency (ies) [OGA].

☐ This information has been referred to the OGA(s) for review and direct response to you.
☑ We are consulting with another agency.   The FBI will correspond with you regarding this information when the consultation is completed.

☐   In accordance with standard FBI practice and pursuant to FOIA exemption (b)(7)(E) and Privacy Act
exemption (j)(2) [5 U.S.C. § 552/552a (b)(7)(E)/(j)(2)], this response neither confirms nor denies the
existence of your subject's name on any watch lists.

For your information, Congress excluded three discrete categories of law enforcement and national security
records from the requirements of the Freedom of Information Act (FOIA).   See 5 U.S. C. § 552(c) (2006 & Supp. IV
(2010).   This response is limited to those records subject to the requirements of the FOIA.   This is a standard
notification that is given to all our requesters and should not be taken as an indication that excluded records do, or do
not, exist. Enclosed for your information is a copy of the Explanation of Exemptions.

Although your request is in litigation, we are required by 5 USC § 552 (a)(6)(A) to provide you the following
information concerning your right to appeal.   You may file an appeal by writing to the Director, Office of Information
Policy (OIP), United States Department of Justice, Suite 11050, 1425 New York Avenue, NW, Washington, D.C.
20530-0001, or you may submit an appeal through OIP's FOIA online portal by creating an account on the following
web site:  https://www.foiaonline.gov/foiaonline/action/public/home.   Your appeal must be postmarked or
electronically transmitted within ninety (90) days from the date of this letter in order to be considered timely.   If you
submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act
Appeal."   Please cite the FOIPA Request Number assigned to your request so it may be easily identified.

☐   The enclosed material is from the main investigative file(s) in which the subject(s) of your request was
the focus of the investigation.   Our search located additional references, in files relating to other
individuals, or matters, which may or may not be about your subject(s).   Our experience has shown
such additional references, if identified to the same subject of the main investigative file, usually contain
information similar to the information processed in the main file(s).   As such, we have given priority to
processing only the main investigative file(s) given our significant backlog.   If you would like to receive
any references to the subject(s) of your request, please submit a separate request for the reference
material in writing.   The references will be reviewed at a later date, as time and resources permit.

☑   See additional information which follows.

Sincerely,

David M. Hardy
Section Chief
Record/Information
   Dissemination Section
Information Management Division

Enclosure(s)

In response to your Freedom of Information/Privacy Acts (FOIPA) requests, enclosed is a processed copy of
responsive documents contained in FOIPA Request Numbers 1374674-000 and 1396901-000.

The enclosed documents Bates stamped FBI 18-CV-00967 -1 through 18-CV-00967 -110 from FOIPA
Request Numbers 1374674-000 and 1396901-000 represent the first interim release of information responsive to
your requests.

Additionally, the FBI has removed some individual e-mail records as "Other – Non-responsive" because
these records were not responsive to your FOIA request.

To minimize costs to you and the FBI, duplicate copies of the same document were not processed.

## EXPLANATION OF EXEMPTIONS

### SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552

(b)(1)    (A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified to such Executive order;

(b)(2)    related solely to the internal personnel rules and practices of an agency;

(b)(3)    specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld;

(b)(4)    trade secrets and commercial or financial information obtained from a person and privileged or confidential;

(b)(5)    inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

(b)(6)    personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal  privacy;

(b)(7)    records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ( A ) could reasonably be expected to interfere with enforcement proceedings, ( B ) would deprive a person of a right to a fair trial or an impartial adjudication, ( C ) could reasonably be expected to constitute an unwarranted invasion of personal   privacy, ( D ) could reasonably be expected to disclose the identity of confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of record or information compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, ( E ) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or ( F ) could reasonably be expected to endanger the life or physical safety of any individual;

(b)(8)    contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions; or

(b)(9)    geological and geophysical information and data, including maps, concerning wells.

### SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552a

(d)(5)    information compiled in reasonable anticipation of a civil action proceeding;

(j)(2)    material reporting investigative efforts pertaining to the enforcement of criminal law including efforts to prevent, control,   or reduce crime or apprehend criminals;

(k)(1)    information which is currently and properly classified pursuant to an Executive order in the interest of the national defense or foreign policy, for example, information involving intelligence sources or methods;

(k)(2)    investigatory material compiled for law enforcement purposes, other than criminal, which did not result in loss of a right, benefit or privilege under Federal programs, or which would identify a source who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(3)    material maintained in connection with providing protective services to the President of the United States or any other individual pursuant to the authority of Title 18, United States Code, Section 3056;

(k)(4)    required by statute to be maintained and used solely as statistical records;

(k)(5)    investigatory material compiled solely for the purpose of determining suitability, eligibility, or qualifications for Federal civilian employment or for access to classified information, the disclosure of which would reveal the identity of the person who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(6)    testing or examination material used to determine individual qualifications for appointment or promotion in Federal Government service the release of which would compromise the testing or examination process;

(k)(7)    material used to determine potential for promotion in the armed services, the disclosure of which would reveal the identity of the person who furnished the material pursuant to a promise that his/her identity would be held in confidence.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JUDICIAL WATCH, INC,                          )
DAILY CALLER NEWS FOUNDATION,   )
                                                             )
                                                             )
          Plaintiffs,                                  )
                                                             )
          v.                                             )
                                                             )          Case No. 1:18-cv-00967-CKK
DEPARTMENT OF JUSTICE,                   )
                                                             )
          Defendant.                                 )
                                                             )

# Exhibit J



**U.S. Department of Justice**

**Federal Bureau of Investigation**
*Washington, D.C. 20535*

September 28, 2018

MR. WILLIAM F. MARSHALL
JUDICIAL WATCH, INC.
SUITE 800
425 THIRD STREET, SOUTHWEST
WASHINGTON, DC 20024

FOIPA Request Nos.: 1374674-000 and 1396901-000
Civil Action No.: 18-CV-00967
Subject: James Comey Memos and Meetings with
President Obama, Et Al.

Dear Mr. Marshall:

The enclosed documents were reviewed under the Freedom of Information/Privacy Acts (FOIPA), Title 5, United States Code, Section 552/552a.  Below you will find check boxes under the appropriate statute headings which indicate the types of exemptions asserted to protect information exempt from disclosure.  The appropriate exemptions are noted on the enclosed pages next to redacted information.   In addition, a deleted page information sheet was inserted to indicate where pages were withheld entirely and identify which exemptions were applied.   The checked exemption boxes used to withhold information are further explained in the enclosed Explanation of Exemptions.

|  | **Section 552** |  | **Section 552a** |
|---|---|---|---|
| ☑ (b)(1) | ☑ (b)(7)(A) | ☐ (d)(5) |
| ☐ (b)(2) | ☐ (b)(7)(B) | ☐ (j)(2) |
| ☑ (b)(3) | ☑ (b)(7)(C) | ☐ (k)(1) |
| National Security Act of 1947, | ☐ (b)(7)(D) | ☐ (k)(2) |
| 50 U.S.C., Section 3024 (i)(1) | | |
| | ☑ (b)(7)(E) | ☐ (k)(3) |
| | ☐ (b)(7)(F) | ☐ (k)(4) |
| ☐ (b)(4) | ☐ (b)(8) | ☐ (k)(5) |
| ☑ (b)(5) | ☐ (b)(9) | ☐ (k)(6) |
| ☑ (b)(6) | | ☐ (k)(7) |

161 page(s) were reviewed and 50 page(s) are being released.

Below you will also find additional informational paragraphs about your request.   Where applicable, check boxes are used to provide you with more information about the processing of your request.   Please read each item carefully.

☑ Document(s) were located which originated with, or contained information concerning, other Government Agency (ies) [OGA].

   ☐ This information has been referred to the OGA(s) for review and direct response to you.
   ☑ We are consulting with another agency.   The FBI will correspond with you regarding this information when the consultation is completed.

☐    In accordance with standard FBI practice and pursuant to FOIA exemption (b)(7)(E) and Privacy Act exemption (j)(2) [5 U.S.C. § 552/552a (b)(7)(E)/(j)(2)], this response neither confirms nor denies the existence of your subject's name on any watch lists.

For your information, Congress excluded three discrete categories of law enforcement and national security records from the requirements of the Freedom of Information Act (FOIA).   See 5 U.S. C. § 552(c) (2006 & Supp. IV (2010).   This response is limited to those records subject to the requirements of the FOIA.   This is a standard notification that is given to all our requesters and should not be taken as an indication that excluded records do, or do not, exist. Enclosed for your information is a copy of the Explanation of Exemptions.

Although your request is in litigation, we are required by 5 USC § 552 (a)(6)(A) to provide you the following information concerning your right to appeal.   You may file an appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, Suite 11050, 1425 New York Avenue, NW, Washington, D.C. 20530-0001, or you may submit an appeal through OIP's FOIA online portal by creating an account on the following web site:  https://www.foiaonline.gov/foiaonline/action/public/home.   Your appeal must be postmarked or electronically transmitted within ninety (90) days from the date of this letter in order to be considered timely.   If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."   Please cite the FOIPA Request Number assigned to your request so it may be easily identified.

☐    The enclosed material is from the main investigative file(s) in which the subject(s) of your request was the focus of the investigation.   Our search located additional references, in files relating to other individuals, or matters, which may or may not be about your subject(s).   Our experience has shown such additional references, if identified to the same subject of the main investigative file, usually contain information similar to the information processed in the main file(s).   As such, we have given priority to processing only the main investigative file(s) given our significant backlog.   If you would like to receive any references to the subject(s) of your request, please submit a separate request for the reference material in writing.   The references will be reviewed at a later date, as time and resources permit.

☑    See additional information which follows.

Sincerely,

David M. Hardy
Section Chief
Record/Information
   Dissemination Section
Information Management Division

Enclosure(s)

The FBI has completed its processing of the responsive material pertaining to the subject of your request. However, there are several outstanding consultations pending with OGAs; we will correspond with you and provide any releasable information as we receive OGA responses.

This release consists of Bates stamped FBI 18-CV-00967 -88, -89, -91, -92, -97, -98, and -99 and FBI 18-CV-00967 -111 through 18-CV-00967 -264 from FOIPA Request Numbers 1374674-000 and 1396901-000.

In the first interim release, you were advised the FBI was consulting with other agencies concerning documents Bates stamped FBI 18-CV-00967 -88, -89, -91, -92, -97, -98, and -99.   Those consultations are complete and the enclosed material is being released to you with the appropriate exemption noted next to the redacted information.

To minimize costs to you and the FBI, duplicate copies of the same document were not processed.

## EXPLANATION OF EXEMPTIONS

### SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552

(b)(1)    (A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified to such Executive order;

(b)(2)    related solely to the internal personnel rules and practices of an agency;

(b)(3)    specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld;

(b)(4)    trade secrets and commercial or financial information obtained from a person and privileged or confidential;

(b)(5)    inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

(b)(6)    personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal  privacy;

(b)(7)    records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ( A ) could reasonably be expected to interfere with enforcement proceedings, ( B ) would deprive a person of a right to a fair trial or an impartial adjudication, ( C ) could reasonably be expected to constitute an unwarranted invasion of personal   privacy, ( D ) could reasonably be expected to disclose the identity of confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of record or information compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, ( E ) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or ( F ) could reasonably be expected to endanger the life or physical safety of any individual;

(b)(8)    contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions; or

(b)(9)    geological and geophysical information and data, including maps, concerning wells.

### SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552a

(d)(5)    information compiled in reasonable anticipation of a civil action proceeding;

(j)(2)    material reporting investigative efforts pertaining to the enforcement of criminal law including efforts to prevent, control,   or reduce crime or apprehend criminals;

(k)(1)    information which is currently and properly classified pursuant to an Executive order in the interest of the national defense or foreign policy, for example, information involving intelligence sources or methods;

(k)(2)    investigatory material compiled for law enforcement purposes, other than criminal, which did not result in loss of a right, benefit or privilege under Federal programs, or which would identify a source who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(3)    material maintained in connection with providing protective services to the President of the United States or any other individual pursuant to the authority of Title 18, United States Code, Section 3056;

(k)(4)    required by statute to be maintained and used solely as statistical records;

(k)(5)    investigatory material compiled solely for the purpose of determining suitability, eligibility, or qualifications for Federal civilian employment or for access to classified information, the disclosure of which would reveal the identity of the person who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(6)    testing or examination material used to determine individual qualifications for appointment or promotion in Federal Government service the release of which would compromise the testing or examination process;

(k)(7)    material used to determine potential for promotion in the armed services, the disclosure of which would reveal the identity of the person who furnished the material pursuant to a promise that his/her identity would be held in confidence.

FBI/DOJ

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| JUDICIAL WATCH, INC, <br> DAILY CALLER NEWS FOUNDATION, | ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) ) | Case No. 1:18-cv-00967-CKK |
| DEPARTMENT OF JUSTICE, | ) ) | |
| Defendant. | ) ) ) | |

# Exhibit K



**U.S. Department of Justice**

**Federal Bureau of Investigation**
*Washington, D.C. 20535*

November 1, 2018

MR. WILLIAM F. MARSHALL
JUDICIAL WATCH, INC.
SUITE 800
425 THIRD STREET, SOUTHWEST
WASHINGTON, DC 20024

FOIPA Request Nos.: 1374674-000 and 1396901-000
Civil Action No.: 18-CV-00967
Subject: James Comey Memos and Meetings with
President Obama, Et Al.

Dear Mr. Marshall:

You were previously advised we were consulting with another agency concerning information located as a result of your Freedom of Information/Privacy Acts (FOIPA) request.

This consultation is complete and the enclosed material is being released to you with the appropriate exemption noted next to the redacted information pursuant to Title 5, United States Code, Section(s) 552/552a as noted below. Below you will find checked boxes under statute headings indicating the appropriate exemptions asserted to protect information which is exempt from disclosure. The checked exemption boxes used to withhold the information are further explained in the enclosed Explanation of Exemptions.

|  Section 552  |  |  Section 552a  |
|---|---|---|
| ☐ (b)(1) | ☐ (b)(7)(A) | ☐ (d)(5) |
| ☐ (b)(2) | ☐ (b)(7)(B) | ☐ (j)(2) |
| ☐ (b)(3) | ☑ (b)(7)(C) | ☐ (k)(1) |
| | ☐ (b)(7)(D) | ☐ (k)(2) |
| _____ | ☑ (b)(7)(E) | ☐ (k)(3) |
| _____ | ☐ (b)(7)(F) | ☐ (k)(4) |
| ☐ (b)(4) | ☐ (b)(8) | ☐ (k)(5) |
| ☑ (b)(5) | ☐ (b)(9) | ☐ (k)(6) |
| ☑ (b)(6) | | ☐ (k)(7) |

35 page(s) were reviewed and 35 page(s) are being released.

☑ The appropriate redactions were made by the White House.

For your information, Congress excluded three discrete categories of law enforcement and national security records from the requirements of the Freedom of Information Act (FOIA). See 5 U.S.C. § 552(c) (2006 & Supp. IV (2010). This response is limited to those records subject to the requirements of the FOIA. This is a standard notification that is given to all our requesters and should not be taken as an indication that excluded records do, or do not, exist.

Although your request is in litigation, we are required by 5 USC § 552 (a)(6)(A) to provide you the following information concerning your right to appeal.   You may file an appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, Suite 11050, 1425 New York Avenue, NW, Washington, D.C. 20530-0001, or you may submit an appeal through OIP's FOIA online portal by creating an account on the following web site:   https://www.foiaonline.gov/foiaonline/action/public/home.   Your appeal must be postmarked or electronically transmitted within ninety (90) days from the date of this letter in order to be considered timely.   If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."   Please cite the FOIPA Request Number assigned to your request so it may be easily identified.

☑        See additional information which follows.

Sincerely,

David M. Hardy
Section Chief,
Record/Information
    Dissemination Section
Information Management Division

Enclosure(s)


In response to your Freedom of Information Act (FOIA) request, enclosed is a processed copy of responsive documents contained in FOIPA Request Number 1396901-000.

The enclosed documents Bates stamped FBI 18-CV-00967-88, 89, 91, 92, 97 through 99, 111 through 116, 121 through 125, 127 through 134, 144, 160, 161, 163, 164, 166 through 168, and 246 from FOIA Request Number 1396901-000 represent the final release of information responsive to your request.

This material is being provided to you at no charge.

**EXPLANATION OF EXEMPTIONS**

**SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552**

(b)(1)    (A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified to such Executive order;

(b)(2)    related solely to the internal personnel rules and practices of an agency;

(b)(3)    specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld;

(b)(4)    trade secrets and commercial or financial information obtained from a person and privileged or confidential;

(b)(5)    inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

(b)(6)    personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;

(b)(7)    records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ( A ) could reasonably be expected to interfere with enforcement proceedings, ( B ) would deprive a person of a right to a fair trial or an impartial adjudication, ( C ) could reasonably be expected to constitute an unwarranted invasion of personal privacy, ( D ) could reasonably be expected to disclose the identity of confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of record or information compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, ( E ) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or ( F ) could reasonably be expected to endanger the life or physical safety of any individual;

(b)(8)    contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions; or

(b)(9)    geological and geophysical information and data, including maps, concerning wells.

**SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552a**

(d)(5)    information compiled in reasonable anticipation of a civil action proceeding;

(j)(2)    material reporting investigative efforts pertaining to the enforcement of criminal law including efforts to prevent, control, or reduce crime or apprehend criminals;

(k)(1)    information which is currently and properly classified pursuant to an Executive order in the interest of the national defense or foreign policy, for example, information involving intelligence sources or methods;

(k)(2)    investigatory material compiled for law enforcement purposes, other than criminal, which did not result in loss of a right, benefit or privilege under Federal programs, or which would identify a source who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(3)    material maintained in connection with providing protective services to the President of the United States or any other individual pursuant to the authority of Title 18, United States Code, Section 3056;

(k)(4)    required by statute to be maintained and used solely as statistical records;

(k)(5)    investigatory material compiled solely for the purpose of determining suitability, eligibility, or qualifications for Federal civilian employment or for access to classified information, the disclosure of which would reveal the identity of the person who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(6)    testing or examination material used to determine individual qualifications for appointment or promotion in Federal Government service the release of which would compromise the testing or examination process;

(k)(7)    material used to determine potential for promotion in the armed services, the disclosure of which would reveal the identity of the person who furnished the material pursuant to a promise that his/her identity would be held in confidence.

FBI/DOJ